## GRIFFIN *v.* KEMP ET AL.

CHECK.—*Form.*—*When Payable.*—A written instrument reading as follows is a check, and not a bill of exchange, and is payable on demand: "COLUMBUS, Ind., Jan. 17th, 1871. First National Bank of Columbus, Indiana, pay to" A. "or order, fourteen hundred and ten dollars and twenty-six cents, as per deposit on the above date." (Signed) B.

SAME.—*Protest not Necessary.*—No protest of a check is necessary in case of its non-payment.

SAME.—*Notice of Dishonor.*—*Damages from Failure to Give Notice.*—When demand of payment of a check has been made and refused, it is the duty of the holder to give notice of the dishonor of the check, but a failure so to do will not discharge the drawer, unless damages result to him from the delay, and then only to the extent of the damages sustained.

SAME.—*Action on Check.*—*Pleading.*—*Notice of Non-Payment.*—In an action by the holder of a check against the drawer, when payment has been refused, the complaint must show that notice was given of the non-payment of the check, or aver a legal excuse for not giving notice.

PLEADING.—*Complaint.*—A complaint or paragraph of a complaint must show a cause of action in favor of all who are joined as plaintiffs.

SAME.—*Complaint on Check.*—*Answer of Set-Off.*—To a complaint by a husband and wife, on a check payable to A. & Co., wherein it is alleged that the wife is in business with other parties, under the firm name of A. & Co., but that the check is her individual property, in which the other members of the firm have no interest, and that it was drawn payable to A. & Co. by mistake, an answer in the form of a cross bill, alleging that the check was given for certain notes bought of A. & Co., and represented by the plaintiffs to be the property of A. & Co., which notes were indorsed to the defendant in the name of A. & Co., and claiming to set off the amount of a note made by A. & Co., and held by the defendant, is good.

PRACTICE.—*Joint Demurrer.*—Where a demurrer is joint to all the paragraphs of an answer, if one paragraph is good, the demurrer should be overruled.

From the Decatur Common Pleas.

*J. Gavin* and *J. D. Miller*, for appellant.

*S. A. Bonner*, *J. L. Bracken*, and *S. Stansifer*, for appellees.

DOWNEY, J.—This was an action by Matilda Kemp and David Kemp against Charles Griffin, Mathew Wilson, Joseph Garard, and Hiram Solomon. The complaint contained three paragraphs, to each of which there was a demurrer by the defendant Griffin; all of which were overruled by the

court. Griffin then answered the general denial and five special paragraphs. The plaintiffs demurred to the second, third, fourth, fifth, and sixth paragraphs of the answer, and all these paragraphs were held bad. The defendants, other than Griffin, made default. He withdrew the general denial which he had pleaded, and there was final judgment for the plaintiffs. The errors assigned are the overruling of the demurrer to the several paragraphs of the complaint, and the sustaining of the demurrer to the second, third, fourth, fifth, and sixth paragraphs of the answer.

In the first paragraph of the complaint, the plaintiffs allege that they are husband and wife; that on the 17th day of January, 1871, the defendant Griffin made his draft or order in writing, as follows:

"COLUMBUS, Ind., Jan. 17th, 1871.

" First National Bank of Columbus, Indiana, pay to Matilda Kemp & Co., or order, fourteen hundred and ten dollars and twenty-six cents, as per deposit on the above date.

"CHARLES GRIFFIN."

It is alleged that this draft or order was afterward presented to said bank for payment; that the bank did not and would not pay the same or any part of it, but wholly neglected and refused so to do, and that the same remains wholly unpaid. It is further alleged, that said Matilda was at the time of making said paper in business with said Mathew Wilson, Joseph Garard, and Hiram Solomon, under the name of Matilda Kemp & Co., but said firm had no interest in the consideration of said check, and had not then, and have not now, any interest in said check; that the same was, when it was made, has been since, and still is, the individual property of said plaintiff Matilda Kemp, wife of said David Kemp; that when the check was drawn by the agent of the defendant, the same was inadvertently, by mistake, or wrongfully and fraudulently drawn payable to Matilda Kemp & Company, or order, when the same should have been made payable to said Matilda Kemp individually. Prayer that the check be reformed, so as to be made payable to said Matilda

Kemp, instead of being payable as it is ; that said Wilson, Garard, and Solomon answer as to their interest in the same ; and that the said Matilda may have judgment against Griffin for fifteen hundred dollars, etc.

Two objections are urged to this paragraph of the complaint. First, that the check is payable on a day certain, and no demand at the bank on that day is alleged. And, second, that it is not alleged that any notice was given to the defendant Griffin of the dishonor of the check.

Considering the frequent use of checks, few cases, comparatively, involving the doctrine relating to them, have been decided in this court. A check is defined to be a written order, or request, addressed to a bank, or to persons carrying on the business of bankers, by a party having money in their hands, requesting them to pay, on presentment, to another person, or to him or bearer, or to him or order, a certain sum of money specified in the instrument. It has been said that checks have many resemblances to bills of exchange, and are, in many respects, governed by the same rules and principles as the latter. But *nullum simile est idem*, and their nature, obligation, and character are in some respects different from those of common bills of exchange. The circumstances in which they principally differ from bills of exchange, or at least from bills of exchange in ordinary use and circulation, are : 1st. They are always drawn on a bank, or on bankers, and are payable on presentment without any days of grace. 2d. They require no acceptance as distinct from prompt payment. 3d. They are always supposed to be drawn upon a previous deposit of funds, etc. Story Prom. Notes, sec. 489 ; *Lester* v. *Given*, 8 Bush, 357. A check so far differs from a bill of exchange or note, that its payment may be countermanded by the drawer before it is accepted or paid by the bank ; and so the death or insolvency of the drawer is in the nature of a countermand of the payment, and the bank ought not to pay ; but if the bank pays without notice of the death, it is said to be a good payment. *Id.*, sec. 498*a*; Morse on Banks, etc., 278. Although there are

Griffin *v.* Kemp *et al.*

cases to the contrary, it seems clear upon principle and by the great weight of authority, that the holder of a check can not sue the bank for refusing payment, in the absence of proof that the check was accepted by the bank, or the amount thereof charged against the drawer. *Bank of the Republic* v. *Millard*, 10 Wal. 152.

There has been considerable discussion upon the question whether if such an instrument be drawn payable so many days after date, or at a fixed day in the future, it is to be regarded as a check, or as a bill of exchange. Morse on Banks, etc., 241, *et seq.*

But this question was long ago settled in this State. In *Glenn* v. *Noble*, 1 Blackf. 104, the check was drawn on the cashier of a bank, payable fifteen days after date, and it was said: "This check must be received as an inland bill of exchange. It has every feature of such a bill, and the rules of decision applicable to the one must govern the other." Counsel is under a misapprehension in stating that the check in the case under consideration is payable on a day certain, and that demand at the bank on that day was essential to render the drawer liable. Checks are generally drawn substantially in the form used in this instance. But whether they are drawn in this form, or on demand, they are equally payable on demand. Judge STORY says : "They are usually in England, and almost invariably in America, made payable without the addition of the words 'on demand;' and then they are, in contemplation of law, equally payable on demand." The instrument in this case is a check, and not a bill of exchange. There is an important difference with reference to the consequences of a failure of the holder of a bill and of a check to present the same for payment, and to give notice of their dishonor. If demand of payment of a bill be not made, or if notice of non-payment thereof be not given, as required by the rules of the commercial law, the drawer is discharged, whether any damage resulted to him from such failure or not. The law presumes that he was damaged, and no evidence is admissible on that subject. If the payee or other

holder of a check receives it immediately from the drawer, in the same town or city where it is payable, he is bound to present it for payment to the bank or bankers, at furthest, on the next succeeding secular day after it is received, before the close of the usual banking hours. He may, however, although he is not bound so to do, present it for payment on the same day on which it is drawn or delivered to him; but he is at liberty to wait until the next succeeding day. Where he receives the check from the drawer in a place distant from the place of payment, it will be sufficient for him to forward it by the post to some person at the latter place on the next secular day after it is received; and the person to whom it is thus forwarded will not be bound to present it for payment until the day after it has reached him by the course of the post. If payment is not thus regularly demanded, and the bank or banker should fail before the check is presented, the loss will be the loss of the holder, who will have made the check his own, and at his sole risk by his laches. But if the bank or banker continue solvent, and no damage arises from the delay in the presentment, the drawer continues liable, a check differing in this respect from a bill of exchange. If the drawer has no funds in the bank or with the banker on which or whom the check is drawn, no demand is necessary. Story Prom. Notes, sec. 493. *Himmelmann* v. *Holating*, 40 Cal. 111; *Bell* v. *Alexander*, 21 Grat. 1. No protest of the check is necessary in case of its non-payment. *Bank of Mobile* v. *Brown*, 42 Ala. 108.

When demand of payment of a check has been made and refused, it is the duty of the holder to give notice of the dishonor of the check. But a failure in this will not discharge the drawer from liability unless damage shall result to him from the delay or failure, and then only to the extent of the damage sustained. Story Prom. Notes, sec. 492; Morse on Banks, etc., 262, 263; 3 Kent Com. 88; *Bank of Mobile* v. *Brown, supra*. Must the holder of a check, in an action against the drawer, when payment of the check has been refused, allege in his complaint that he gave notice of

the non-payment of the check, or aver a legal excuse for not having done so? We think he must. This question arose in *Requa* v. *Guggenheim*, 3 Lansing, 51. The court said: " It is well settled that a drawer of a check is not liable to the holder in case of non-payment by the drawee, unless he has had notice of demand and refusal to pay. *Harker* v. *Anderson*, 21 Wend. 372, and cases cited. It was material, therefore, to aver notice to the defendant, or a most material element of a cause of action was wanting. Such was the rule at common law." Accordingly, upon examination, we find the averment in the approved forms of declarations on checks at common law. 2 Chitty Pl. 143, 144. We conclude that the first paragraph of the complaint was bad for the want of an averment of notice of non-payment of the check or an excuse for not giving it.

The second paragraph of the complaint alleges that Matilda Kemp was the owner of two promissory notes executed by Robert Spaugh, payable to her; that she sold the same to Griffin and delivered the same to him, for which he promised to pay her fourteen hundred and ten dollars and twenty-six cents, which he has wholly failed to do; that the notes were intended to have been sold for cash, and there had been an unreasonable delay of payment, and that the notes and purchase-money therefor belong exclusively to her; that the other defendants claim some interest in the transaction. She asks that they may be made defendants to answer as to their interest, and for judgment against Griffin for fifteen hundred dollars, etc.

It is objected to this paragraph that it shows no right of action in which David Kemp has any interest, nor does it allege that the plaintiffs are husband and wife. We think this objection to the second paragraph is well taken. A complaint or paragraph of complaint must show a cause of action in favor of all those who are joined as plaintiffs. *Lipperd* v. *Edwards*, 39 Ind. 165. The statute provides that husband and wife may join in all causes of action arising from

injuries to the person or character of either and both of them, or from injuries to the property of either and both of them, or arising out of any contract in favor of either and both of them. 2 G. & H. 334, sec. 794. The first and third paragraphs show the relation of husband and wife between the plaintiffs. This one does not.

In the third paragraph of the complaint, it is alleged that the defendant Charles Griffin is indebted to said plaintiff Matilda Kemp, wife of said David Kemp, in the sum of sixteen hundred dollars for personal property sold and delivered to him, a bill of particulars of which is filed, and that the other defendants claim some interest in said property. She asks that they may be made defendants to answer as to their interest therein, and for judgment against Griffin for two thousand dollars, etc. No particular objection is urged against this paragraph. Whatever objections the other defendants might have urged against it, we think it is good as against Griffin, the only party demurring to it.

The second paragraph of the answer assumes the form of a cross complaint against Matilda Kemp and the defendants in the original complaint other than Griffin, and alleges, in substance, that the several causes of action in the paragraphs of the complaint are one and the same, and grew out of the same transaction mentioned in the first paragraph of the complaint; that at the time of drawing the check, the son and agent of the plaintiffs represented that the firm of Matilda Kemp & Co. had two notes on Spaugh, which they desired to sell; that at that time the defendant had in contemplation the purchase of an outstanding note given by said firm of Matilda Kemp & Co., hereafter more particularly described; that the notes of Spaugh, when produced, were found to be payable to Matilda Kemp, and the son and agent of said Matilda being in possession of said notes of Spaugh endorsed them in the name of said Matilda Kemp, and offered them to the defendant, but he, having in view the purchase of said outstanding paper of Matilda Kemp & Co., refused to purchase the same; that thereupon the said

son and agent of plaintiffs represented to the defendants that it was all the same, and that said notes were the property of said Matilda Kemp & Co., and thereupon indorsed said notes in the following style, to wit, Matilda Kemp & Co., and delivered the same to him, and received the said check therefor, with full knowledge and consent of the firm to which the same was payable, viz., Matilda Kemp & Co.; that thereupon said defendant in good faith, and in full confidence of the truth of said representations of said agent, that the said note was the property of the firm of Matilda Kemp & Co., at great trouble and expense, purchased for a valuable consideration said note executed by said firm, of Matilda Kemp & Co., January 22d, 1871, for one thousand three hundred and sixty-seven dollars and fifty-three cents, payable one day after date, at the office of the Indiana Banking Company, to C. Dickson & Co., a copy of which is filed herewith; wherefore he says said Matilda Kemp is estopped to deny that the note so sold and assigned was the property of said firm of Matilda Kemp & Co., and that the check sued on was, and is, the property of said firm of Matilda Kemp & Co.; and the defendant by way of set-off says that when this action was commenced, the plaintiffs were, and now are, indebted to him in the sum of sixteen hundred dollars upon said note, which is due and unpaid, and which he offers to set off, etc.

We are of the opinion that this paragraph of the answer is good. The cause of action of the plaintiffs upon its face is in favor of Matilda Kemp & Co. They attempt by averments of mistake, etc., to make it a cause of action in favor of Matilda Kemp alone. The defendant pleads as a set-off a demand in his favor against Matilda Kemp & Co., alleging that the causes of action mentioned in the complaint are one and the same, all growing out of the purchase of the Spaugh notes and the giving of the check, and that the causes of action in the complaint are the causes of action of Matilda Kemp & Co., and not of Matilda Kemp alone. The parties interested being all before the court, we do not see any objection to setting off one demand against the other. The fact

that David Kemp is a plaintiff can make no difference. He is a mere supernumerary—a mere nominal party—so far as he appears as a plaintiff in the first and third paragraphs of the complaint.

The demurrer to the answer was a joint demurrer to all the paragraphs except the first, assigning causes of demurrer separately, however. But it must be treated as a joint demurrer, and the rule must be applied to it, that if any one of the paragraphs was good, it should have been overruled by the court. We shall not examine the other paragraphs of the answer, as what has already been determined may enable the court and the parties to dispose of the case satisfactorily upon the new issues to be formed.

The judgment is reversed, with costs, and the cause remanded, with instructions to sustain the demurrer to the first and second paragraphs of the complaint, and allow the parties to amend.