## HOUSWORTH ET AL. *v.* BLOOMHUFF ET AL.

PRACTICE.—*Trial by Jury.*—*Special Verdict.*—*Defective Verdict.*—*Venire De Novo.*—A special verdict by a jury trying a cause must be certain and responsive as to all the material issues of such cause, a positive finding, either affirming or denying each material allegation of the pleadings therein; otherwise, such verdict should be set aside and a *venire de novo* granted, on motion.

SAME.—Where a special verdict by a jury is silent as to some material issue in the cause they are trying, the court receiving such verdict can not supply such omission nor render judgment on such verdict.

SAME.—*Action to Recover Real Estate.*—In a suit to set aside a conveyance of lands executed by the plaintiff to the defendant, one paragraph asked such relief on the ground of fraud, specifically alleging the facts constituting such fraud, and the other on the ground that such conveyance should be treated as a mortgage to secure the payment of a debt due from the former to the latter. To this complaint, the defendant answered the general denial and two special pleas; and, upon these special answers, issue was formed by a reply of denial and a special plea. And the jury trying such cause found specifically the facts alleged in the first paragraph of the complaint and as to a portion of the allegations of the special answers, but did not find as to the other allegations of the pleadings. *Held,* that such verdict was properly set aside and a *venire de novo* granted, on motion therefor.

From the Allen Circuit Court.

*R. S. Taylor* and *L. M Ninde,* for appellants.

*John Morris,* for appellees.

HOWK, J.—On the 2d day of November, 1865, the appellants, as plaintiffs, commenced this action in the court below, against one Sidney C. Bloomhuff as the sole defendant. Issues were formed in the action, and at the May term, 1867, of the court below, these issues were duly submitted to a jury for trial; and on the application of the appellants, under the direction of the court, the jury returned into court a special verdict. And at the same term of the court below, the said Sidney C. Bloomhuff, then the sole defendant, moved the court for a new trial of the action. At the next term of the court below, said Sidney C. Bloomhuff moved the court for a *venire de novo,* and also in arrest of judgment; and appellants moved the court to strike out the written causes for a new trial, and affidavits and counter-affidavits were filed by the parties in support of, and in opposition to, the said motions or some of them. And the court below sustained the appellants' motion to strike out the written causes for a new trial, and to this decision the said defendant excepted; and the court then overruled the said motion for a new

trial, and to this ruling the defendant also excepted. And the court below sustained said defendant's motion for a *venire de novo*, to which decision of the court the appellants excepted. And the appellants having interposed a motion for a judgment in their favor, on the special verdict of the jury, this motion was overruled by the court below, and an exception was duly saved to this decision. No further action was then had in said cause before the next November term, 1868, of the court below, at which term the death of the defendant, Sidney C. Bloomhuff, was suggested, and leave was given to make new parties defendants, and the cause was continued.

It does not appear from the record, that any amended or supplemental complaint, making new parties defendants, was ever filed by the appellants; nor does it appear that the appellees or any of them were in any manner made parties to the appellants' original complaint, nor that the appellees or any of them were ever served with process in this cause. But at the November term, 1870, the adult appellees, by attorney, and the infant appellees, by guardian *ad litem*, appeared and filed their joint answer, and the appellants replied thereto by a general denial. And the action being at issue was tried by the court below, without a jury; and the court found for the appellees, and rendered judgment accordingly.

The appellants have assigned, in this court, the following alleged errors of the court below :

First. In sustaining the motion of the defendant, Sidney C. Bloomhuff, for a *venire de novo*, and in ordering · said *venire de novo* to be issued in said cause;

Second. In ordering the special verdict in said cause to be set aside, and a *venire de novo* to be issued; and,

Third. In overruling appellants' motion for a judgment in their favor, on said special verdict.

Before considering the questions presented by these alleged errors, it is proper that we should give a summary, at least, of the pleadings filed by the parties respectively,

in the court below, and of the special verdict, making this summary as concise as we can, with the view, at the same time, of making it intelligible. And in doing this, we have concluded to adopt the appellants' own statement of their complaint, as follows:

" The appellants brought this suit in the court below to set aside a deed for fraud, and to redeem. Their complaint contains two paragraphs. The first sets up the agreement between the parties and a circumstantial history of the fraudulent practices indulged in by said appellees' ancestor to secure the deed, and asks the deed set aside.

" The second paragraph sets up the terms of the agreement, and such facts as the appellants insist make the conveyance a security for money owing from Gibfords to Bloomhuff. The allegations in the first paragraph are substantially as follows:

" That on the 6th day of March, 1858, one Saloam Gibford, who was then the wife of Abraham Gibford, since deceased, owned eighty acres of land, therein described, and executed five promissory notes to one Simpson Gibford, amounting in the aggregate to the sum of one thousand six hundred and fifty dollars, and a mortgage on the said land to secure the same. That the said Simpson sold said notes to the defendant, Sidney C. Bloomhuff, for one thousand one hundred dollars. That these notes were taken up by the said Saloam's husband, Abraham Gibford, Sr., by giving his three notes to said Bloomhuff, amounting to one thousand seven hundred and ninety dollars, which notes were secured by a mortgage on the same land.

" That on the 18th of June, 1861, said Bloomhuff took a judgment on said last named notes and a foreclosure of the mortgage, in the Allen common pleas court. That on the 5th of June, 1862, said Abraham and Saloam executed a deed to said Bloomhuff for one hundred and twenty-three and one-half acres of land; part thereof being the

said eighty acres belonging to said Saloam and the balance belonging to said Abraham.

"That at the time said deed was executed, said Abraham Gibford was involved, so that he and his said wife had no expectation of being able to raise the means to pay off the said judgment of foreclosure, except by sale of the mortgaged property. That Gibford was old and infirm, and he and the defendant were on terms of intimacy and friendship, so much so that Gibford had implicit confidence in him. That Bloomhuff, to increase his influence and control over Gibford, affected to take great interest in his affairs and offered to assist him in his financial difficulties. That to get said Gibfords to execute the deed, Bloomhuff fraudulently represented to them that the mortgaged lands would sell better by adding to them the other lands belonging to said Abraham, and that they would be more valuable and sell better together than separately, and that if they would convey the whole of them to him, they should have the right to sell the same, and he would convey to their vendee and retain out of the purchase money enough to repay him the one thousand one hundred dollars he paid Simpson Gibford, and the interest thereon, and they were to have the balance.

"That he didn't want the land, but his said money and interest. And Bloomhuff further represented to them if they could not sell the property but could raise him said one thousand one hundred dollars, and interest thereon, he would reconvey the property to them; or, if they could do neither, he would pay off one thousand eight hundred and forty dollars, more, of said Abraham's debts. That the Gibfords, moved by said representations and promises, and having full faith and confidence in said Bloomhuff and in his integrity and that he would carry out said promises, made the deed.

"The complaint proceeds to charge that said representations were concurred in by the Gibfords and that they and said Bloomhuff agreed, that although the said deed

should be absolute on its face, yet, the Gibfords should have the right to sell and receive all the purchase money except the one thousand one hundred dollars and interest, or if they could not sell but could pay that money and interest, he would reconvey to them, and if they could do neither, he would pay the one thousand eight hundred and forty dollars, additional debts, for Gibford. The complaint alleges all of said representations were false and fraudulent and made for the fraudulent purpose of getting said deed, with the original intention, at the time he made the said representations and promises, not to perform the same but to keep the land and cheat the Gibfords out of it.

" The complaint then contains several averments in reference to Gibford's sale of the land and application to Bloomhuff to make the deed, and his refusal, which facts, on account of Gibford's death, were not proved nor found by the jury in their special verdict, and are not therefore material or necessary to be further noticed.

" It is further averred that Bloomhuff refused to perform any of his agreements, but that he took possession of the property on receipt of the deed and has retained the same ever since, and that the rents and profits were worth two thousand dollars. There are some other formal allegations in reference to descents, parties, etc.

" The second paragraph is essentially a paragraph seeking to redeem against the deed as a mortgage."

The defendant, Sidney C. Bloomhuff, answered the appellants' complaint by a general denial, and by two special paragraphs; but as no questions are presented to this court having special reference to the sufficiency of the defendant's answers, we need not now further notice them. To the defendant's special answers, the appellants replied by a general denial, and by two special replies. The defendant moved the court below to strike out the third reply, which motion was sustained. And the cause was then submitted to a jury for trial, and this jury re-

turned into the court below the special verdict, before mentioned, which verdict was, in substance, as follows:

That Saloam Gibford was, on March 6th, 1858, the wife of Abraham Gibford, Sr., and seized of certain lands, particularly described, in fee simple, in Allen county, Indiana, being part of the lands described in the complaint; that on said day she executed to Simpson Gibford five notes, amounting in the aggregate to one thousand six hundred and fifty dollars, and a mortgage on her said lands to secure the payment thereof; that said Simpson Gibford sold and assigned said notes and mortgage to the defendant, Sidney C. Bloomhuff, on March 6th, 1861, for one thousand one hundred dollars; that on said day, Abraham Gibford executed to the defendant three notes, amounting in the aggregate to one thousand and seven hundred and ninety dollars, and with his wife, Saloam Gibford, executed to the defendant a mortgage on her said lands to secure the payment of said notes; that said first mentioned notes and mortgage were paid and cancelled by the execution and delivery of said last mentioned notes and mortgage; that the defendant recovered judgment on said notes against said Abraham Gibford, in the court of common pleas of said Allen county, for one thousand eight hundred and twenty-five dollars and fifty cents, on June 18th, 1861, and a decree for the foreclosure of said mortgage against said Abraham and Saloam Gibford; that on June 5th, 1862, said Abraham and Saloam Gibford executed to the defendant a deed, conveying to him the lands therein described, being the same deed mentioned in the complaint in this cause, and the lands being the same lands described in said complaint; that the said mortgaged lands were included in said deed and were, prior to said deed, the property of said Saloam Gibford; that all the remainder of said lands were, prior to the execution of said deed, the property of said Abraham Gibford.

That the said deed was obtained by the said defendant

from the said Gibfords by fraud; that prior to the execution of said deed the said Abraham Gibford was deeply in debt; that he and his said wife had no reasonable expectation of being able to raise means to pay off said judgment of foreclosure, except by a sale of said mortgaged premises or the sale of other lands; that the said Abraham Gibford was an old man, above seventy years of age; that the said defendant was on terms of close intimacy and friendship with, and had the implicit trust and confidence of, him and his said wife; that the said defendant, for the fraudulent purpose of increasing his influence and control over the said Gibford, affected to take great interest in the affairs of said Gibford and to be willing and ready to assist him in his financial difficulties; that the defendant fraudulently represented to said Abraham and Saloam Gibford that by the addition to the said mortgaged lands of the other lands conveyed by said deed and which belonged to said Abraham Gibford, they would render the whole more valuable and salable than either or both pieces were, alone; and that if they would convey the said lands in the said deed described to him, they should have the right themselves to sell the same, and that upon such sale he would make a deed of said lands to such purchaser and take out of the purchase money therefor the amount he had paid Simpson Gibford for said mortgage, with interest, while the rest should belong to said Abraham and Saloam Gibford; that he did not wish to own the lands, but only to get his money and interest; that if they should be able, by any other means, to raise the money and pay him the said amount, with interest, he would reconvey said lands to them, and that if it should happen that they could neither sell said lands nor pay him said money he would assume and pay debts, for which said Abraham Gibford was liable, to the amount of eighteen hundred and forty dollars; that the said Abraham and Saloam Gibford, moved by said representations and promises, executed said deed;

that the said defendant and said Abraham and Saloam Gibford, by parol, at the time of the execution of said deed, agreed that, notwithstanding said deed was absolute on its face, the said Abraham and wife should have the right to sell said land, and that upon such sale said defendant should convey said lands to such purchaser and have, out of such purchase money, the amount which he had paid said Simpson Gibford for said mortgage, as aforesaid, with interest, while the remainder should belong to said Abraham and Saloam Gibford, and that in case said Gibfords should raise said money and pay him the said sum and interest, otherwise than by a sale of said property, he would reconvey said lands to them; that the said defendant, at the same time, fraudulently promised said Gibfords that if they could not or should not sell said land or pay him said claim of his, he would pay the sum of eighteen hundred and forty dollars upon said debts, for which said Abraham Gibford was liable, and that said representations, promises and agreements on the part of said defendant, before and at the time of the execution of said deed, were false, and were made by him for the purpose of fraudulently inducing said Abraham and Saloam Gibford to execute said deed; the defendant, through all said negotiations, was actuated by an original intention to defraud said Gibfords, and did not intend, at the time he made any of said promises or agreements, to perform the same, but fraudulently made and used the same for the sole purpose of thereby obtaining said conveyance, intending at the time, after having obtained said conveyance, to repudiate them all and keep said lands as his own absolutely; that the said Abraham and Saloam Gibford relied wholly on the honor and good faith of the said defendant and executed said deed upon the faith of his said fraudulent representations, promises and agreements.

That on June 9th, 1862, the defendant entered satisfaction of his said decree of foreclosure, and that satisfaction

was the only consideration which passed from the defendant to said Gibfords; that the defendant did not perform any of his said promises .or agreements; that said lands were, at the time of said conveyance, of the value of three thousand five hundred dollars; that said Saloam Gibford, on June 17th, 1863, died, intestate, leaving her husband, Abraham Gibford, and her three children, naming three of the appellants; that on January 16th, 1864, said Abraham Gibford and his then wife, Rachel Gibford, executed to the defendant a deed conveying to him the lands therein described, being the same deed and the same lands mentioned and described in defendant's answer in this action; that the defendant, after the execution of the said first deed, and up to the execution of said last deed, continued close intimacy and friendship with said Abraham Gibford, and exercised great influence over him, and represented to him that he still intended, in good faith, to carry out his said promises in respect to said lands; that during said time said Abraham Gibford had married the defendant's sister-in-law; that the defendant represented to said Gibford that he intended to move on said farm and be his neighbor; that all said representations were false, and made for the fraudulent purpose of inducing said Abraham Gibford to execute said last mentioned deed; that said Abraham Gibford relied upon said representations and promises, and, in consequence of them believed that the defendant would still redeem his former pledges, and on the faith of them was persuaded and induced to execute said last mentioned deed; that soon after the execution of said first mentioned deed, the defendant took possession of the lands described therein, and had derived therefrom rents and profits to the amount of eleven hundred and fifty dollars; that said judgment of foreclosure and interest then amounted to two thousand three hundred and sixty-three dollars and ninety-two cents, and that in April, 1867, said Abraham Gibford died, intestate, leaving as his heirs his widow, Rachel Gibford, and five

children and three grandchildren, naming them, the appellants in this action.

If, upon the facts so found, the court below should be of the opinion that the law was for the appellants, then the jury found for the appellants; but if the court below should be of opinion, on said facts, that the law was for the defendant, then the jury found for the defendant.

It will be seen from appellants' assignment of errors, before referred to, that the only questions thereby presented for the consideration of this court may be thus stated:

First. Did the court below err in overruling appellants' motion for a judgment in their favor, on the special verdict of the jury?

Second. Did the court below err in sustaining the motion of the defendant, Sidney C. Bloomhuff, to set aside the special verdict of the jury, and for a *venire de novo?*

And these two questions may be regarded as but one, for if one of them be answered in the affirmative, that answer of itself negatives the other. So that the only real question in this case is this: Does the special verdict returned by the jury on the trial of this cause contain all the legal requirements of a special verdict? Our code of practice defines a special verdict thus: "A special verdict is that by which the jury find the facts only, leaving the judgment thereon to the court." 2 R. S. 1876, p. 171, sec. 335. In *Bird* v. *Lanius*, 7 Ind. 615, it was held, by this court, that by a special verdict was meant, "not an isolated fact, tending to support or defeat an issue, but it is an issue joined between the parties, arising upon a cause of action in the complaint, and a denial of it in the answer, or upon a defence set up in the answer, put in issue by the reply." A special verdict must contain a finding by the jury, pro or con, as to every material fact in issue, necessary to constitute the plaintiff's cause of action or the defendant's defence. And the reason for this requirement is, that the

court can neither supply an omitted necessary fact, nor can it render judgment upon an imperfect verdict. If the special verdict should not contain a finding by the jury, either for or against each material fact in issue necessary to constitute the cause of action or cause of defence, then the proper remedy of the aggrieved party is a motion to set aside the verdict, and for a *venire de novo*. *Bosseker* v. *Cramer*, 18 Ind. 44; *The Cincinnati, etc., R. R. Co.* v. *Washburn*, 25 Ind. 259; *Smith* v. *Jeffries*, 25 Ind. 376; *Jenkins* v. *Parkhill*, 25 Ind. 473.

The case last cited was an action against two defendants, the plaintiff's complaint containing four paragraphs; and the jury trying the cause had returned a verdict for the plaintiff upon the first two paragraphs of the complaint, as against both defendants, and upon the last two paragraphs of the complaint, as against one only of the defendants, and finding neither for nor against the other defendant, on said last two paragraphs. In the lower court there was a motion for a *venire de novo*, on the ground that the verdict was defective in not finding for nor against one of the defendants, on the issues joined on said last two paragraphs of the complaint, but the motion was overruled, as was also a motion for a new trial, by the court below. On appeal, it was held by this court, that the *venire de novo* should have been awarded, and the court approved of this statement of the law, upon the subject now under consideration, saying: "If a jury finds but part of the matter put in issue, and says nothing as to the rest, the verdict is ill, and a *venire facias de novo* shall issue if no judgment is given, but if judgment is given upon such verdict, it shall be reversed." In Stephen Pl., 3d Am. Ed. 100, it is said, that a *venire facias de novo* will be awarded when the jury has "given an uncertain, ambiguous or defective verdict."

In our opinion, we have now stated fully and correctly the law of this State on the subject of defective verdicts. Applying this law to the case at bar, the question arises,

did the jury in this case, in their special verdict, find but a part of the matter put in issue and say nothing as to the rest? If they did, in the pithy and quaint language above quoted, their verdict was ill and the *venire de novo* was properly awarded.

We have examined the special verdict in this case with great care, and have endeavored to give to each word and expression therein its full force and meaning. We have studied the issues in this cause arising under both paragraphs of the complaint and under the special answer of the defendant, and we have carefully compared the facts found by the jury in their special verdict with the facts alleged and in issue by and between the parties to this action, and from this comparison the conclusion is irresistible, that, in and by their special verdict in this case, the jury found but a part of the matter put in issue and said nothing as to the rest. Indeed, it seems to us, from this comparison, that the draftsman of this special verdict, in his anxiety to prepare a verdict for the jury which would cover every material averment of the first paragraph of appellants' complaint, must have entirely overlooked the second paragraph of said complaint and partly, at least, the averments of the defendant's special answer.

In their statement of the second paragraph of appellants' complaint, appellants' learned attorneys, with all the brevity of wit, have condensed this second paragraph, covering eight long pages of manuscript in the record of this cause, into this concise expression: "The second paragraph is essentially a paragraph seeking to redeem against the deed as a mortgage." But brief as is this statement, the jury have failed to find, in their special verdict, even this much in relation to the second paragraph of appellants' complaint; they wholly failed to find whether the deed in question was or was not, in legal effect, a mortgage, or to make such a finding of facts in connection with said deed as that the court below

could conclude therefrom, as matter of law, that such deed, though absolute on its face, was in fact a mortgage.

And so, also, in reference to the averments of the second paragraph of the defendant's answer, upon which issue had been joined by the appellants, by their reply in denial thereof. The defendant, in this second paragraph of his answer, had set up, by way of estoppel, in substance, the following facts: that about nineteen months after the execution of the deed to the defendant, mentioned in appellants' complaint, to wit, on the 16th day of January, 1864, the said Abraham Gibford, being then the owner of about four acres of land adjoining the lands he had before that time conveyed to the defendant in the aforesaid deed, proposed to sell and convey to the defendant the said four acres of land, to be used by said defendant, in connection with said adjoining lands, as and for a building site, for the sum of two hundred dollars, being more than double the value thereof; that said four acres of land was desirable for the purpose of a building spot, and the defendant was desirous of owning it for that purpose, which said Abraham well knew, and because he so knew it he proposed to sell the same for that purpose, and demanded therefor double its value; that to secure said piece of land the defendant agreed to and did purchase the same of said Abraham for said sum of two hundred dollars, which he paid, and thereupon the said Abraham and his wife conveyed said piece of land to the defendant for said purpose; and the defendant averred, that, at the time said conveyance was made, the said Gibford knew fully and entirely all the facts connected with the purchase of the lands mentioned in appellants' complaint.

Now, all the matters alleged in this second paragraph of the defendant's answer were directly put in issue by appellants' reply in denial thereof. Of these matters, the jury have found, in their special verdict, the fact, only, of the execution of the deed in said second paragraph of

answer mentioned, and have said nothing as to the rest of the matters alleged in said paragraph. This will not do. The special verdict was ill. And the court below committed no error, either in overruling appellants' motion for judgment in their favor, or in sustaining the defendant's motion for a *venire de novo*.

The judgment of the court below is affirmed, at the costs of the appellants.

WORDEN, C. J., having been of counsel on the trial of the above cause, in the court below, was absent.