HENSHAW ET AL. *v.* ROOT ET AL.

CHECK.—*Dishonor of.*—*Action on.*—Where a check given in payment of a debt is dishonored, action need not be brought for such debt, but may be maintained on the check.

SAME.—*Protest.*—A dishonored check need not be protested to bind the maker.

SAME.—*Notice of Non-Payment.*—*Pleading.*—In an action against the maker, on a dishonored check, the complaint, setting out a copy thereof, alleged its execution and delivery, its presentation, on the day it was issued, for payment, its dishonor and notice thereof to the defendant, and that the defendant, at the time of its issue, had no funds deposited for its payment. *Held,* on demurrer, that the complaint is sufficient.

SAME.—*Delay.*—*Damages.*—Mere delay in giving notice to the maker of the dishonor of his check does not discharge him from liability thereon, but he is entitled to whatever damages he may suffer by reason of such delay.

SAME.—*Partnership.*—*Admission of.*—Where, in an action against a partnership, on a dishonored check, executed in the firm name, the execution of the check is not denied by plea under oath, and the check is introduced in evidence without objection, the existence of the partnership is thereby admitted.

SAME.—*Evidence.*—Where, in an action against a partnership, the existence of the partnership may be inferred from indirect evidence, a finding of that fact will not be disturbed for want of direct evidence thereof.

From the Madison Circuit Court.

*H. D. Thompson,* for appellants.

*J. D. Sansberry* and *E. B. Goodykoontz,* for appellees.

NIBLACK, J.—Deloss Root and James B. Root, doing business under the name of D. Root & Co., sued Seth B. Henshaw and Adam Wolf, as partners, under the name of Seth B. Henshaw & Co., on a check, as follows:

" $244\frac{22}{100}$.          ANDERSON, IND., Nov. 11th, 1873.

"First National Bank of Anderson pay to D. Root & Co., or bearer, two hundred and forty-four & $\frac{22}{100}$ dollars.

"SETH B. HENSHAW & CO."

The complaint averred the execution of the check by the defendants as partners and in their said partnership name, its presentation for payment on the day of its execution, its non-payment, notice of its non-payment, and that at the time of issuing said check the defendants had not sufficient funds in the bank to pay it.

A demurrer to the complaint alleging a want of sufficient facts was overruled, and the defendants answered in three paragraphs:

1.  In general denial;

2.  Alleging that at the time of presenting the check it was agreed between the plaintiffs and the bank, that its payment should be postponed until a future day, and that, before it was again presented, the bank had failed, whereby, for want of diligence on the part of the plaintiffs, damage resulted to the defendants, releasing them from liability as the drawers of said check;

3.  Payment of the debt for which the check was given.

The plaintiffs replied in denial of the 2d and 3d paragraphs of the answer.

At the trial, there was a finding in favor of the plaintiffs, for the amount of the check with interest, and, over motions for a new trial and in arrest of judgment, judgment was rendered on the finding.

The first error is assigned upon the overruling of the demurrer to the complaint.

It is objected that the action ought to have been brought on the original debt or consideration for which the check was given, and not on the check itself, as the foundation of the action.

The natural inference from the giving of a check is, that it was given in payment of a debt due the payee from the drawer, and, when payment of it has been refused, and notice of its non-payment duly given, the drawer is as much liable upon it as if it were a dishonored bill of exchange drawn by him. Such is the doctrine of the modern text-writers, and such is now recognized as a well established rule of law. *Pollard* v. *Bowen*, 57 Ind. 232; *Griffin* v. *Kemp*, 46 Ind. 172; *Harker* v. *Anderson*, 21 Wend. 372.

It follows, that a dishonored check is as properly the foundation of an action as a dishonored bill of exchange, and may be declared upon in the same manner. *Harker* v. *Anderson, supra;* 2 Chit. Plead., 16th Am. ed., p. 115.

It is also objected, that the day on which the notice of non-payment was given to the defendants ought to have been alleged. In practice, such an allegation is not usual, and is deemed by us to be unnecessary. A protest of a check is not required, and a general averment of notice of non-payment is sufficient.

The complaint appears to us to have been sufficient on demurrer.

The second error is assigned upon the overruling of the motion for a new trial.

It is further objected, that the evidence was not sufficient to sustain the finding of the court, particularly as regards notice to the defendants of the non-payment of the check, and as to the alleged partnership of the defendants creating the firm which executed the check.

Henshaw, one of the defendants, testified that his place of business, where the check was given, was at Alexandria, eleven or twelve miles across the country from the city of Anderson; that there was a mistake in the date

of the check; that it was executed on the 12th day of November, 1873, and ought to have borne that date.

Thomas H. S. Peck testified, that he was foreman of the plaintiffs' foundry at Indianapolis, and, as such foreman, had done a good deal of iron work for the defendants; that he was at Alexandria, for the purpose of settling with the defendants, when the check was given, and that the check was delivered to him for the plaintiffs; that, when Henshaw handed him the check, he said he did not have money enough in the bank to pay it, but that there was some interest due his firm, and he thought Mr. Stilwell, the president of the bank, would honor it; that, on the next day after the execution of the check, he, Peck, presented it to the bank at Anderson, on which it was drawn, when Stilwell, the president, refused to pay the check, or any portion of it, and, after so refusing, said: "Take it" (the check) "down to Indianapolis, put it in the First National Bank, where I am doing my business, and I will make it all right with him in a few days; I must have time." Also, that Stilwell, in the same connection, said something about Henshaw's account being short, and that it was bad enough to have to pay those he did owe, instead of paying those he did not owe, but declined to say how much money Henshaw had in bank, remarking that he did not know.

Peck further testified, that he then took the check with him to Indianapolis, where the plaintiffs resided, and delivered it to them there.

Deloss Root, one of the plaintiffs, testified, that he received the check from Peck on the morning of the 14th of November, 1873, and handed it to the First National Bank of Indianapolis, for collection, that afternoon; that a few days thereafter—perhaps on the Monday following—the check was returned to him unpaid; that, on the 21st day of November, 1873, he mailed to the defendants a written notice of the dishonor of the check.

Henshaw also testified, that the First National Bank

of Anderson failed in its business on the 15th day of November, 1873, and that he received the notice of the dishonor of the check, which was mailed to him on the 21st day of November, 1873, as above stated by the plaintiff Deloss Root; also, that there were but three mails a week at Alexandria, his place of business, from Indianapolis.

Daniel F. Mustard, one of the book-keepers, testified, that, at the time Peck presented the check as above stated by him, there were but two hundred and sixteen dollars and nine cents in the bank to the credit of the defendants.

This is but a brief synopsis of what we regard as the most important testimony given on the trial, and is, we think, sufficient to present the material questions raised upon the evidence. There was considerable other testimony given on the trial, and some conflict in the testimony as to certain collateral and minor matters, but nothing seriously in conflict with the synopsis above given.

When Peck presented the check to the bank at Anderson, and payment of it was refused, the plaintiffs might have given immediate notice of its dishonor, and looked only to the defendants for payment; but it seems to us both reasonable and proper, considering the nature of the transaction, that they should have made another effort to collect the check of the bank, by handing it over to the First National Bank of Indianapolis, for collection, in accordance with the suggestion of Stilwell, as testified to by Peck.

The check was understood between the parties to be a probable over-draft, as it turned out to be in reality, of the defendants' account. Payment of it, therefore, could not be insisted on as a matter of right, but only as a favor. Persuasive means to induce payment could only have been contemplated by the parties.

Under these circumstances, we can not hold that the

defendants had reason to complain of the delay in giving notice to them of the dishonor of the check, resulting from the placing of it in the bank at Indianapolis for collection.

Mere delay in giving notice of non-payment, provided it is given before suit is brought, does not discharge the drawer of a check from liability, unless damage results from such delay, and then only to the extent of the damage sustained. *Griffin* v. *Kemp, supra,* and authorities there cited.

In the case at bar, it was not reasonably practicable for the plaintiffs to have given the defendants notice of the non-payment of the check before the day of the failure of the bank on which it was drawn, and nothing is shown to indicate that any damage resulted from the delay, in giving such notice for a few days afterward.

On the trial there was no evidence directly tending to prove an actual partnership between the defendants at the time of the execution of the check sued on, but the introduction of the plaintiffs' receipted account and the defendants' bank account, taken in connection with the form of the notice of the dishonor of the check, and in connection with many of the casual expressions of the witnesses when referring to the defendants, all afforded evidence from which such a partnership might have been reasonably inferred. Besides, the failure to deny the execution of the check under oath, and thus permitting the check to be read in evidence against them without proof of its execution, was a practical admission by the defendants of their execution of the check in the character in which they were sued.

The third and last error is assigned upon the overruling of the motion in arrest of the judgment, but as the complaint was sufficient on demurrer, there was no error in refusing to arrest the judgment.

After a careful review of the proceedings below we see no reason for a reversal of the judgment.

The judgment is affirmed, at the costs of the appellants.