The Nat'l Bank of Rockville v. The Second Nat'l Bank of Lafayette.

THE NATIONAL BANK OF ROCKVILLE v. THE SECOND NATIONAL BANK OF LAFAYETTE.

CHECK.—*Complaint by Payee Against Drawee.—Acceptance.*—A complaint by the payee, against the drawee, upon a bank check, which does not allege an acceptance thereof, by the drawee, is insufficient.

SPECIAL VERDICT.—*Venire de Novo.*—A special verdict, which covers all the issues formed, is sufficient.

SAME.— *Words Control Marginal Figures:—Uncertainty.*—The body of a check was for "twenty-one and thirty-six in exchange dollars," while the margin contained the figures " $2,136.00."

*Held*, that the figures were controlled and contradicted by the words in the body of the check.

SAME.—*Acceptance.*—The fact that the cashier of a bank, upon which a check is drawn, takes the check and places it upon the " cancelling fork," does not constitute such an acceptance as will prevent him from declining to pay, and returning, the same, upon learning that the drawer has not sufficient funds, or if the check is not in proper form.

From the Tippecanoe Circuit Court.

*G. S. Orth, J. Park* and *J. A. Stein*, for appellant.

*J. M. Larue* and *F. B. Everett*, for appellee.

BIDDLE, C. J.—Complaint in three paragraphs, by the appellant, against the appellee, on a bank check. A. T. Colton is the maker of the check, the appellant is the payee, and the appellee is the drawee. Demurrer for want of facts sustained to the first and third paragraphs of the complaint. Answer of general denial to the second paragraph. Trial by jury, and special verdict for appellee; motion for a *venire de novo* overruled; motion for a new trial overruled; motion in arrest of judgment overruled; exceptions; judgment; and appeal.

We need not particularly state either the first or third paragraphs of the complaint. Each sets out the check and avers its presentation for payment, by the payee. There is no averment of its acceptance by the drawee, in either paragraph; indeed, each paragraph avers that the drawee refused to accept the check. In other respects these two

paragraphs are well pleaded.   Breach, non-payment of the check.

A bank check has all the requisites of a bill of exchange, except that it is due on demand, without days of grace, and, if dishonored, requires no protest for non-acceptance nor for non-payment.   There is no implied contract in favor of the payee, against the drawee, that he will either accept or pay the check.   The drawee is no party to the check until he accepts it; and a party can not be sued on an express contract before he enters into it.   The fact that the drawee has funds in his hands, belonging to the drawer, sufficient to pay the check, does not change the rule.   The case of *National Bank* v. *Eliot Bank,* 5 Am. Law. Reg. 711, is in point.   We believe there is no decided case contrary to it. ABBOTT, J., delivers a long and ingenious dissenting opinion, but we cannot regard it as sound.   He places the right of the payee to sue the drawee for non-acceptance or non-payment of the check, upon the ground that, when a first party contracts with a second party to pay a sum of money to a third party, the third party, although not a party to the contract, may sue the first party upon the contract and recover.   This is true upon express contracts ; but there is no implied contract in such cases, that the first party shall pay the third party.   Hence the necessity of an express acceptance of the check, before the drawee is liable.   In the case put as an illustration, the drawer of the check is the first party, the drawee the second, and the payee the third.   Now, as there is no implied contract between the drawee and the payee, he can not sue the drawee upon the check, until he has accepted it.   There are other convincing reasons in our minds against the rule contended for.   If the drawee, having funds, refuses to pay the drawer's check, he becomes liable thereby to the drawer, and the drawer becomes liable to the payee.   Now, if in such case the drawee

was also liable to the payee, and the payee had his right against both the drawer and the drawee, this complication would take the qualities of commercial paper from the check, and place it upon the ground of a common-law contract; and, to apply this principle to foreign and inland bills of exchange, the great movers and upholders of the world's business, would be to embarrass, if not destroy, their usefulness in civilization, and impair the commercial faith of mankind. There are no implied contracts in commercial paper, and it must not be embarrassed by secret equities; and that express contracts touching it can be made in any other manner than in writing, is the constant regret of the ablest jurists.

These views are fully supported by the following authorities: Edwards Bills, etc., 405; Byles Bills, 18; *Glenn* v. *Noble*, 1 Blackf. 104; *St. John* v. *Homans*, 8 Mo. 382; *Chapman* v. *White*, 6 N. Y. 412; *Bullard* v. *Randall*, 1 Gray, 605; *Pope* v. *Luff*, 7 Hill, 577; *Griffin* v. *Kemp*, 46 Ind. 172; *Pollard* v. *Bowen*, 57 Ind. 232; *Henshaw* v. *Root*, 60 Ind. 220.

Under the authorities, we must hold the first and third paragraphs of the complaint insufficient.

The appellant relies upon the case of *Wilson* v. *Dawson*, 52 Ind. 513; but, in that case, the bank—the depositary—was not a party to the suit; besides, the money was deposited under an express agreement, and for an express purpose. In this case, as the money was deposited with the drawee generally, there is no express contract, and the bank—the depositary—is a party. We can see no analogy between the two cases.

The special verdict, returned by the jury upon the second paragraph of the complaint, is in the following words:

" The National Bank of Rockville, and the Second

National Bank of Lafayette, are national banks organized under the laws of the United States, the first located at Rockville, in the State of Indiana, and the other at Lafayette, in said State; that on the 14th day of September, 1877, Andrew T. Colton, by the description of A. T. Colton, at the counter of said Bank of Rockville, drew a check on the Second National Bank of Lafayette, in the words and figures following, to wit:

"'LAFAYETTE, Ind., Sept. 14th, 1877.

"'Second National Bank, pay to J. M. Nichols, Pr., or order, twenty-one and thirty-six, in exchange dollars.
          (Signed,)          "'A. T. COLTON.'

"On the lower left-hand margin of the check is the $2,136.00; that said check has not been endorsed by the said Nichols; that said check was mailed by the cashier of the Bank of Rockville aforesaid, on Saturday, Sept. 15th, 1877, in time for the train going from Rockville to Terre Haute at half past eleven o'clock A. M., and received by the Second National Bank of Lafayette, on Monday, September 17th, 1877; that the check was enclosed in a letter which reads as follows:

"'NATIONAL BANK OF ROCKVILLE,
          "'ROCKVILLE, Ind., Sept. 15, 1877.

"C. T. Mayo, Cashier, Lafayette, Ind.:

"Dear Sir: I enclose for return your twenty-one thirty-six ($2136).          Respectfully,          S. L. McCUNE.'

"That on Saturday, September 15th, 1877, A. T. Colton, the drawer of said check, deposited in the Second National Bank of Lafayette three thousand eight hundred and forty-five dollars, subject to his check as a general depositor, and stated to the cashier of said bank that he had drawn several checks. one of which was to one Rambo, and one to the Bank of Rockville, which last was named as about two thousand dollars; that one of these checks so drawn had been paid; and, at the time of said deposit, the ac-

count of the said A. T. Colton, at the Second National Bank of Lafayette, was overdrawn in the sum of four hundred and eighty dollars, and two of said checks were in the bank at the time of making said deposit, unpaid; that at the opening of the bank at banking hours, on Tuesday morning, September 18th, 1877, there was but thirteen hundred and seventy-three dollars and three cents, in said Second National Bank of Lafayette to the credit of said Colton; that when said check was received by the defendant, on the 17th day of September, 1877, the same was placed in the bank, and on the morning of the 18th, the cashier of the defendant took said check and calculated the exchange on the sum of $2,136 in figures, on the back, at the rate of one and one-half per cent., and placed the same on the cancelling fork; thereupon he was informed by the receiving and paying teller of the bank that the drawer had not sufficient funds on deposit to pay the check. Thereupon the cashier immediately took the check from the fork, and declined to pay it, and indorsed upon it as follows: 'Cancelled in error; not charged; check not properly drawn;' caused the check to be protested for non-acceptance. When the check was presented by the notary for acceptance, the reason given for non-acceptance was that the check was not in proper form. The check was then returned to the plaintiff, with notice of its non-acceptance, in a letter as follows:

"'S. L. McCune, Cashier, Rockville, Ind.:

"'Dear Sir: I return, under protest, A. T. Colton on us, $2136; pro. fees, $1.05. Refused on account of informality of drawing up the check.

"'Very respectfully,      Chas. T. Mayo, Cash'r.'

"The check sued on was acknowledged by said Colton, also by the plaintiff and defendant, as a check for the amount of twenty-one hundred and thirty-six dollars ($2136). If, from these facts, the court is of the opinion

the plaintiff should recover, we find for the plaintiff, and assess her damages at ($2,171.60) twenty-one hundred and seventy-one dollars and sixty cents. If the court is of opinion that the defendant should recover, then we find for the defendant."

Upon the return of the verdict, the plaintiff moved for a *venire de novo*, upon the ground that the verdict did not find on all the issues presented by the pleadings. The court overruled the motion, and we think properly. The facts found decide the entire controversy. The only issues presented by the second paragraph of the complaint were the making of the check by the drawer, its presentation for payment to the drawee, and its acceptance, averring the several dates. These averments were denied by the answer. On these issues, except as to the averment of acceptance, the jury find for the plaintiff with dates, etc. But the plaintiff insists there is no sufficient finding on the issue of acceptance. We think there is. They find that the drawee declined to pay the check, and caused it to be protested for non-acceptance. The protest was unnecessary, yet the fact is found distinctly, that the drawee would neither accept nor pay the check. Indeed, it seems to us that the verdict is unnecessarily particular in several respects. As to what is sufficient or insufficient to constitute a special verdict, see the following cases : *The Toledo, Wabash and Western R. W. Co.* v. *Hammond,* 33 Ind. 379 ; *Pea* v. *Pea,* 35 Ind. 387 ; *Housworth* v. *Bloomhuff,* 54 Ind. 487 ; *Whitworth* v. *Ballard,* 56 Ind. 279 ; *Locke* v. *The Merchants National Bank,* 66 Ind. 353 ; *Graham* v. *The State,* 66 Ind. 386.

The amount of the check upon its face is in dispute between the parties. It is contended by the appellant that it is drawn for $2,136, that the figures in the lower corner of the left-hand margin govern the amount. We are of the opinion that, in this view, the appellant is

mistaken. It is true, the amount in the body of a check may be stated in figures, and the check will be valid if not contradicted in words; but the amount stated in figures, usually at the bottom or top of the left-hand margin, does not control the amount of the check, especially when contradicted by the words in the body of the check.

These marginal figures are merely for convenience of reference, and constitute no necessary part of the check. They may be there or not; may differ with the body of the check, or not; it is the same thing. The instrument is perfect without them. *Smith* v. *Smith*, 1 R. I. 398; 2 Daniel Negotiable Instruments, p. 539, sec. 1580.

Placing the check on the cancelling fork, by the mistake of the appellee's cashier, and afterwards correcting the error, did not amount to an acceptance of the check, nor in any manner affect its validity. *Bellamy* v. *Marjoribanks*, 7 Exch. 389; *Warwick* v. *Rogers*, 5 Man. & G. 340.

From the view we have taken of the case, it is not necessary for us to decide what amount is expressed in the body and on the face of the check. As the unit dollar is not expressed, either by the dollar mark or by a word, nor the cents by a point, as when sums are expressed in figures, perhaps the first number expressed by words might be held to mean dollars, and the second number cents, as amounts of money are thus usually expressed in figures; if so, the check would call for twenty-one dollars and thirty-six cents. *Northrop* v. *Sanborn*, 22 Vt. 433.

But we do not decide this question, for we think the same result must be reached, whether we hold the amount of the check to be $2,136.00, or $21.36. It appears to us that the whole question turns upon the acceptance or non-acceptance of the check by the drawee. As we have held, as a principle of law, that the drawee is not liable, unless the check was accepted, and as the jury have

found that it was not accepted, it follows that the appellant can not recover. The facts found by the jury in the special verdict are the same in substance, and almost literally indeed, as those averred in the first and third paragraphs of the complaint. As we have held these paragraphs insufficient in law to constitute a cause of action, it follows again, that the appellant can not recover; and we think the following authorities sustain us fully: *Johnson* v. *Collings*, 1 East, 98; *Levy* v. *Cavanagh*, 2 Bosw. 100; *Dykers* v. *The Leather Manufacturers' Bank*, 11 Paige, 612; *Bullard* v. *Randall*, 1 Gray, 605; *Luff* v. *Pope*, 5 Hill, 413; *Pope* v. *Luff*, 7 Hill, 577.

Certain instructions to the jury were asked by the appellant; and refused by the court. We need not set them out. The ruling on the demurrers to the first and third paragraphs of complaint sufficiently shows, that, in our opinion, they were properly refused; even if it were necessary to give any instructions, when the jury are required to find a special verdict. They were to the effect that the payee could recover against the drawee, upon the check, although he had not accepted it.

The evidence supports the verdict.

The judgment is affirmed, at the costs of the appellant.