No. 12,341.

## The Security Company, Trustee, v. Ball.

MORTGAGE.—Promissory Note.—Action to Procure Surrender and Cancellation.—Check.—Failure of Bank.—Liability for Loss.—B. employed C. & N. to negotiate a loan for him. They applied to D. & Co., who procured the money from their principal, the Security Company, and deposited it in bank. Shortly thereafter, B. executed his note and mortgage for the

amount and delivered them to D. & Co., who left a check on the bank with N. to be delivered to B. when he had obtained the release of prior encumbrances on his land, which the latter agreed to obtain at a certain date. B. did not carry out his agreement at the time fixed, nor subsequently, and ten days later, while the check was still in the hands of N., the bank failed.

*Held,* that B. is not liable for the loss, and that he may maintain an action against the Security Company for the surrender and cancellation of the note and mortgage.

From the Rush Circuit Court.

*R. B. Duncan, J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellant.

*B. L. Smith* and *W. J. Henley,* for appellee.

ZOLLARS, J.—Appellee brought this action to procure the surrender and cancellation of a note and mortgage which appellant holds, the mortgage being of record.

The main ground upon which this relief is asked is, that the note and mortgage were given for a loan of money from appellant which it neglected and refused to furnish after getting the note and mortgage.

The question for decision is raised by the assignment that the court below erred in sustaining a demurrer to appellant's answer.

The facts set up in the answer are, in substance, as follows: In May, 1884, appellee employed Cambern & Newkirk, of Rushville, to negotiate for him a loan of $3,000, and agreed to secure the same by his promissory note and a mortgage upon his land, and agreed also, that his title to the land should be perfect and free from encumbrances, and that he would furnish an abstract of title to any one who should furnish the money, showing these facts. Through these parties, appellee applied to Thomas C. Day & Co., of Indianapolis, to procure the loan upon the above named terms. These terms were communicated by Day & Co. to appellant, and it at once remitted the money to them to be loaned to appellee, so soon as he should furnish an abstract showing that he was the

owner of the land, and that his title was free from encumbrances. Day & Co. deposited the money in Fletcher & Sharpe's Bank, at Indianapolis. Appellee furnished to Day & Co. an abstract, which showed that he owned the land, subject to a mortgage of over $3,000, and a judgment for about $330. At the time he furnished this abstract he informed them that he was ready at any time to procure a release of the mortgage and judgment, and thus be able to convey a good title whenever appellant should furnish the $3,000 to be used in paying off the existing mortgage and judgment. In June, 1884, one Griffith, a member of the firm of Day & Co., visited appellee at his farm, and informed him that he had come to make the loan, and had brought a check for the amount upon Fletcher & Sharpe's Bank, to be delivered upon the execution of a note and mortgage by appellee, and a release of the existing mortgage and judgment. The holder of the existing mortgage was present, and expressed a willingness to go to Rushville and cancel his mortgage upon the payment of the amount of it to him. Appellee being busy with his harvest declined to go on that day, but agreed with Griffith, as the agent of appellant, that he would execute the note and mortgage and deliver them to Griffith for appellant, and that Griffith should deliver the check to Newkirk, to be by him delivered to appellee so soon as the existing mortgage and judgment should be released, which appellee agreed should be done on the coming Saturday, the 5th day of July. In accordance with this agreement, appellee executed and delivered the note and mortgage in suit, and Griffith delivered the check of Thomas C. Day & Co. to Newkirk, to be delivered to appellee upon his procuring the other mortgage and the judgment to be released and satisfied. Thereafter, Thomas C. Day & Co. left the check with Newkirk, and kept the money on deposit in Fletcher & Sharpe's Bank to meet it.

If appellee had caused the encumbrances upon his land to be released as agreed, he would have received the check on

The Security Company, Trustee, v. Ball.

the 5th day of July, and it could have been forwarded to Fletcher & Sharpe's Bank and collected on the following Monday, the 7th day of July. Appellee did not cause the encumbrances to be released on the 5th day of July, nor has he since done so, and hence did not, and has not received the check. So far as the parties knew, Fletcher & Sharpe's Bank was solvent at the time the check was placed in the hands of Newkirk. It continued to meet all demands upon it until the 15th day of July, 1884, when it failed in business and suspended payment. Whether it has since resumed payment, or whether its assets are sufficient to pay the whole, or any part of its liabilities, is not shown by any averment in the answer. It is averred in the answer, as a conclusion, that as appellee did not procure the release of the prior mortgage and the judgment on the 5th day of July, as he had agreed to do, the check after that time "stood and remained" at his risk.

This answer, although the fact is not averred, was drawn upon the theory that by the failure of Fletcher & Sharpe's Bank the deposit was lost, and the check became worthless. Assuming this as a fact, the argument of appellant's counsel is, that if appellee had performed his contract by causing the encumbrances to be released on the 5th day of July, he might have received and collected the check before the failure of the bank; that because he did not thus perform his contract, he should suffer the loss consequent upon that failure; and that, hence, appellant should be allowed to retain and collect the note and mortgage, the same as if it had actually paid the money over to appellee. In this contention counsel invoke the protection of the general rule applicable to bank checks. It is the settled law that the holder or payee of a bank check must present it to the drawee for payment within a reasonable time, and if he fails to do this, and the bank upon which it is drawn in the meantime becomes insolvent, the drawer is relieved from liability, at least *pro tanto*, and the loss must fall upon the holder.

The delay, under the circumstances of this case, from the 5th to the 15th day of July, would be such a delay as would, under the general rule above stated, throw the loss upon the holder of the check. The loss from which the drawer would be thus relieved, would be the actual loss suffered by the failure of the bank. If that loss should be the entire amount on deposit to meet the check, the drawer would be relieved entirely from liability upon the check. If the bank should pay, or be able to pay one-half, or any other part, of the amount on deposit to meet the check, the exoneration of the drawer would be proportionally less. *Griffin* v. *Kemp*, 46 Ind. 172; *Henshaw* v. *Root*, 60 Ind. 220.

If it should be conceded that this principle of the law could in any way be made available in the case in hand, it is clear, we think, that the answer under consideration is not such as to make it available. It is averred that on the 15th day of July the bank failed in business, and suspended payment, but it does not follow from this that appellant suffered any loss. The bank might have failed in business and suspended payment on that day, and yet have had sufficient assets to pay its liabilities in full. It might have failed in business and suspended payment on that day, and yet before this action was commenced it might have recovered entirely from its embarrassment, and have been able to pay its liabilities dollar for dollar. For aught that is averred in the answer, appellant might have recovered from the bank the amount of its deposit, against which the check was drawn; and hence no loss is shown for which appellee can be made liable.

We think it clear, too, that the above principle of the law can not be invoked in appellant's behalf in this case. The check was never delivered to appellee, and hence he could not have presented it for payment. Had he procured the release of the prior encumbrances on the 5th day of July, he could have demanded the check from Newkirk. This he did not do on that day, nor did he at any subsequent time. This

failure did not, as matter of fact, put the check into his possession or keeping, and, clearly, his failure to do the thing required to entitle him to the possession and ownership of the check did not have the effect of making him the owner of it. He never has been the owner of the check. He never has had the possession, nor has he been entitled to the possession, of the check; hence he could not have presented it for payment. He agreed to make a loan from appellant, and has neglected and failed to do so, by neglecting to furnish an unencumbered title to his land. If appellant had kept the money in its own safe, the measure of its damages for the breach of the contract on the part of appellee clearly would not have been the amount of the money. If appellant had placed the money, instead of the check, in the hands of Newkirk to be paid to appellee upon the release of the prior encumbrances on the 5th day of July, and after that time Newkirk had lost or wasted it, clearly, again, the measure of appellant's damages for the breach of the contract by appellee would not have been the amount of the money thus lost or squandered, because that loss would not have been the natural and probable consequence of the neglect or wrong of appellee, nor such as might have been foreseen in the light of attending circumstances. In such case the neglect or wrong of appellee would not have been the proximate cause of the loss. The loss would have occurred, primarily, from the wrong of Newkirk, and but for his wrong intervening, the loss would not have occurred. Instead of keeping its money in its safe, or placing it in the hands of Newkirk, appellant placed the money in Fletcher & Sharpe's Bank, to be held by it until needed to perfect the loan to appellee. Appellee violated his contract in not freeing his land from the prior encumbrances on the 5th day of July. After that time the bank failed in business, and we assume, what is not alleged, that by this failure appellant lost its money on deposit with the bank. The failure of the bank produced the loss. This failure was the primary and proximate cause of the loss. The failure

of appellee to keep his contract did not produce this loss. If appellant had kept the money in its own safe, it would not have been lost. Nor did the failure of appellee to keep his contract produce, or conduce to, the failure of the bank. The bank's failure, and the consequent loss to appellant, were not the natural and probable consequences of appellee's neglect or wrong. The failure was an unforeseen, independent and intervening agency, that produced the loss to appellant. The loss resulted from over-confidence on the part of the depositor, and bad banking by the banker, and not from anything that appellee did or failed to do.

Upon any view that may be taken of the case, the court below ruled correctly in sustaining the demurrer to the answer.

The judgment is affirmed, with costs.

Filed June 13, 1885; petition for a rehearing overruled June 23, 1886.