## The Second National Bank of Detroit v. Theodore Williams.

*Check unaccepted, not an assignment.* — Where one *in extremis* drew his check upon the bank, with directions to the payee to defray the funeral expenses of the drawer out of it, and to pay the balance to his heirs, and the check was not accepted by the bank at the death of the drawer, it was *held* that the check did not operate as an assignment of the fund, and that the bank was not liable upon it to the payee.

*Donatio causa mortis.* — No mere contract, liability or obligation of the donor can be the subject of a gift *causa mortis;* and, therefore, an unaccepted bank check, which, if not paid, merely creates a liability on the part of the drawer, is not valid as a gift by him *causa mortis.*

*Heard May 5 and .6.    Decided May 13.*

Error to Wayne Circuit.

Assumpsit. In addition to the common counts, the declaration contained a special count, setting forth a deposit with the defendant below of $600 by one John B. Simson, a check drawn by him in favor of the plaintiff upon the defendant for that amount, and that said check was an assignment of said sum to the plaintiff, the consequent liability of the defendant, its promise to pay and a breach thereof. Trial by jury.

On the trial, the plaintiff put in evidence the bank book of John B. Simson, which was admitted to be correct; whereby it appeared that said Simson deposited with the defendant, on the 7th day of September, 1864, the sum of $600, and that the same had not been drawn out.

The plaintiff then introduced as a witness Charles Simson, who testified that he was a son of said John B. Simson, and on being shown a check in the words and figures following, viz.:

"No.                         DETROIT, Oct. 11, 1864.

SECOND NATIONAL BANK OF DETROIT.

{ STAMP }          Pay to Theodore Williams, or order, six
hundred dollars.

$600.                              his
                      JOHN B. + SIMSON.
                              mark.
Witnesses, Eugene D. Webber,
          Charles Simson."
    Indorsed, "Theo. Williams."

Testified that he was one of the witnesses to said
check; that said check was signed and executed on
Thursday or Friday, and that his father died on the
Sunday following; that on the 11th day of October,
1864, his father was in very poor health, and did not
expect to live; that he saw the paper signed, did not
see it drawn; that his father tried to sign it, but was
too weak to do so.; that plaintiff then wrote his father's
name, and his father made his mark; that his father
was possessed of his mind, and knew what he was
about; that witness did not know what the object of
making the check was.

Alfred Griffith was then introduced as a witness, on
behalf of plaintiff, and testified that he was a son-in-
law of John B. Simson; that said Simson was very low
between the time of drawing the check and his death;
that witness asked said Simson if he had drawn the
check, and said Simson replied he had; that said Sim-
son was clear in his mind, and appeared to know what
he was about, and to understand the matter well.    The
witness further explained the object in giving the check,
as follows:    Mr. Simson expected to die; he had confi-
dence in the plaintiff, and drew the check for $600,
being all, or nearly all, his property, with the under-
standing that the plaintiff should draw the money, pay
the funeral expenses, and pay the rest over to Simson's
family, and thus save the expense of an administration
on the estate.

Andrew McLellan was then introduced as a witness on behalf of plaintiff, and testified that he was teller in V. J. Scott's banking office; that plaintiff left said check at their office for collection; that witness presented said check on the 14th day of October, 1864, at defendant's counter for payment, and payment was refused on the ground that defendants were not satisfied of the genuineness of the signature of said John B. Simson, and that said check was thereupon returned to plaintiff.

The indorsement of the check was admitted to be in the hand-writing of plaintiff. The plaintiff then offered to read said check in evidence, to which defendants objected, but the Court overruled the objection, and permitted it to be read to the jury. And thereupon the plaintiff rested.

The defendants then introduced as a witness C. M. Davison, who testified that he was defendants' cashier; that said check was presented for payment at defendants' counter, by V. J. Scott's teller, and payment was refused, on the ground that the defendants were not satisfied of the genuineness of the signature of said John B. Simson; that plaintiff presented said check for payment, and witness told him that he would let one of the defendants' clerks go with plaintiff to Simson's residence, and if said Simson would say that said check was all right, defendant would pay it; that plaintiff assented to said arrangement, and said he would call in again in a few moments; that plaintiff did not call in again, as he had agreed to; that witness afterwards saw said plaintiff, and asked him why he had not called in again, and that plaintiff replied that he had concluded not to do so; that he should have to sue; that afterwards, and after the death of said John B. Simson, the plaintiff and a daughter of said John B. Simson came to the bank with said check, and requested payment of it, and one of them — the witness could not remember which — said that said John B. Simson wished

to give the money to said daughter, and had made the check payable to plaintiff for the purpose of having him get the money and paying it to her, and that this was done to save the expense and trouble of making a will, and of having administration upon his estate; and that the money was needed to pay funeral expenses; that witness replied he would be willing to pay it if he was satisfied of the genuineness of the signature of John B. Simson, but unless he was, he had no authority to pay it; but if plaintiff would give a bond of indemnity to the bank, the bank would pay the check; plaintiff refused to do so, and the check was not paid.

And thereupon the Court charged the jury that upon the law of the case, there being no dispute as to the facts, the plaintiff was entitled to recover as assignee of the $600 deposited with defendants.

To this charge the defendants excepted,

The defendants' counsel then requested the Court to charge the jury that the drawing of said check by said Simson, payable to the order of said plaintiff, did not, without being accepted by the bank, operate as an assignment of the money deposited by said John B. Simson with defendants; which charge the Court refused to give, and defendants excepted.

The defendants further asked the Court to charge the jury that there was no sufficient consideration for drawing the check to enable the plaintiff to sustain the action. The Court refused so to charge, and the defendants excepted.

And the jury returned a verdict for plaintiff for $605 $\frac{68}{100}$, being the $600 and interest.

*Jerome & Swift,* for plaintiff in error:

The verdict of the jury, under the charge of the Court below, can only be sustained on the ground of an assignment by way of gift *inter vivos,* or as a *donatio*

*causa mortis,* and that the check itself operated as such assignment.

The only assignment, if any there was, was the check itself. That, however, so far as it operated as a transfer, took effect at once; and inasmuch as the money was to remain. Simson's till his death, it seems inconsistent with the rules of construction of instruments to give an effect to the check which its terms do not import.

In *Bradford v. Fox,* 39 *Barb.,* 204, it is said that if a check drawn upon a banker is not paid, the money still remains the property of the drawer.

In *Bellamy v. Majoribanks,* 8 *Eng. L. & Eq.,* 513, the Judge who gives the opinion of the Court says: The lawful holder of the check " could not sue the drawee, unless the drawee had accepted the check."

And the following authorities show that neither checks nor other like instruments, unless accepted, operate as an assignment of the money in the hands of the drawee.— *Spalding v. Lesley,* 2 *Speer,* 754; *Seargent v. Seward,* 31 *Vt.,* 509; *Williams v. Everett,* 14 *East.,* 582; *Yates v. Bell,* 3 *B. & Ald.,* 643; *Watson v. Loflland,* 4 *Harr.,* 60; *Sheppard v. State,* 3 *Gill.,* 289; *Wheeler v. Stone,* 4 *Gill.,* 38; *Dykers v. Leather Man'f's Bank,* 11 *Paige,* 612; *Luff v. Pope,* 5 *Hill,* 413; 7 *Hill,* 577; *Cowperthwaite v. Sheffield,* 3 *N. Y.,* 243; *Winter v. Drury,* 5 *N. Y.,* 525; *Chapman v. White,* 6 *N. Y.,* 412; *N. Y. & Va. Bank v. Gibson,* 5 *Duer,* 574; *Ketchum v. Stevens,* 6 *Duer,* 463.

The requisites of a valid *donatio causa mortis* are set forth in *Story's Equity Jurisprudence,* §607a. In §607c it is said, " a mere chose in action not subsisting in any specific instrument cannot pass by a *donatio causa mortis.*" This rule is fatal to considering the gift in this case as such donation.

In *Dole v. Lincoln,* 31 *Maine,* 422, it is said: " *Donations causa mortis* are not favored in law, but are admitted with the greatest caution."

See, also, the remarks of the Court in *Raymond v. Sellick*, 10 *Conn.*, 480; *Holley v. Adams*, 16 *Vt.*, 206.

In *Meach v. Meach*, 24 *Vt.*, 598, Judge Redfield says, that any chose in action, if it be the contract or promise of some other person than the donor, and do not constitute *any obligation upon the donor*, may by mere delivery constitute a good gift *mortis causa*.

Upon this ground the donor's own promissory notes are invalid as gifts *causa mortis.* — *Raymond v. Sellick*, 10 *Conn.*, 480; *Holley v. Adams*, 16 *Vt.*, 206.

So his check. — *Harris v. Clark*, 3 *N. Y.*, 94; *Tate v. Hilbert*, 2 *Ves.*, 121; *Thompson v. Dorsey*, 4 *Md. Ch.*, 149.

*L. Bishop*, for defendant in error:

The question presented may be stated thus: Did the giving of the check in question on the banker, for the whole sum on deposit, directing the money to be paid to the payee of the check, operate in law as an assignment of the money to such payee? We claim it did, and that it is the same, in legal effect, as if the instrument had read as follows:

"For value received, I hereby assign to Theodore Williams the $600 I have on deposit in the Second National Bank of Detroit, with full power to demand and receive the same, and I direct said money to be paid to him."

Such an assignment would have authorized the assignee to bring a suit for the money in his own name, under the act of 1863, and the books seem clearly to sustain the proposition that such a check as this, *for the whole sum on deposit*, is an assignment of the money to the payee of the check.

A bill of exchange, for the amount of the fund on deposit drawn upon, has the effect of an assignment to

the payee of the sum for which it is drawn. — *Chitty on Bills*, 1, 2; *Edwards on Bills*, 44; 2 *Parsons on Bills*, 57; 1 *B. & P.*, 286; 1 *H. Bl.*, 602; 1 *Vesey, Sr.*, 330; 3 *Term R.*, 174; 1 *Caines R.*, 363.; 3 *J. R.*, 71; 12 *J. R.*, 277; *Griffith v. Reed*, 21 *Wend.*, 502; 9 *Mass.*, 337; 10 *Mass.*, 319; 12 *Mass.*, 206; 1 *McCord*, 106; 12 *Rich. L.*, 518; 5 *Wheat.*, 285; 1 *Wash. C. C.*, 424-6; 2 *Seld.*, 417; 20 *Pick.*, 17; 3 *Greenl. R.*, 346; 12 *Cal.*, 92, cited 20 *U. S. D.*, 157, §51; 14 *Cal.*, 403, cited 21 *U. S. D.*, 97, §62, §63; 1 *Hill*, 583.

From custom, and from a universal practice among bankers and depositors, there results between them an implied agreement to the following effect:

The banker will take, and be responsible for the money deposited, in consideration of its use; the depositor may draw his checks at any time, for the whole or any part of the money, and the banker will pay such checks on presentation, *to the payee or bearer, whoever that may be.*

One part of this bargain is a valid consideration for the other, and it is binding as a whole. It need not be, as it never or rarely is, in writing. By this implied agreement the banker obligates himself to pay the checks of the depositor to the payee or bearer of them, whoever that may be, even though the checks are but for a part of the fund, and *a fortiori* if they are for the whole. This mode of doing business is well understood among all business men the world over, and it is illustrated in the every-day practice of bankers. As a result of the understanding and agreement, and as a result of the authorities, *the payee or bearer of a check may, on refusal of payment, bring his action for the money in his own name against the banker.* The common counts are also the proper form of remedy in such a case.

Among other cases relied on as sustaining this doctrine in principle, before the point came before the Courts

directly, the following may be cited: 2 *Wm. Blk.*, 1269; 1 *B. & P.*, 296; 1 *John. Cases*, 205; 3 *John. R.*, 82; 12 *John. R.*, 276; 17 *Mass.*, 400, 575; 2 *Metc.*, 381; 1 *Cranch*, 436; 2 *Denio*, 45; 3 *Term*, 182.

The first reported case where this doctrine is brought directly before the Courts, is *Fogarties v. State Bank*, decided, with *Ambler v. Same*, in 1860, by the Court of Appeals of South Carolina. The Court, in these cases, in an exhaustive opinion, going over the whole ground, come square up to our proposition, and decide directly that the holder of an unaccepted check, though drawn generally, and for but part of the fund on deposit, may recover upon it in his own name, in an action for money had and received, brought by him against the banker. — 12 *Rich. L.*, 518. See, also, 24 *Texas*, 155, *cited in* 21 *U. S. D.*, 96, §40, §41.

A banker having funds of the drawer of a check in his hands, has no right to refuse payment on presentation of the check. To do so is clearly a wrong. — 2 *Parsons on Bills*, 60; 12 *Rich. L.*, 528.

CHRISTIANCY J.:

The counsel for the defendant in error — plaintiff below — insists that the check of Simson, importing of itself a sufficient consideration, and being for the whole amount of the money of the drawer on deposit in the bank, operated, as between the drawer and the payee, as an assignment to the latter of the money, or the drawer's right to it; and as the drawer, before giving the check, might have sustained an action against the bank for the amount, the payee, as assignee of the drawer, may now maintain the action, under the Statute of 1863, authorizing the assignee of a chose in action to sue in his own name. I do not think the question whether a check can, in any case, operate as an assignment, by the drawer, of the money, or the drawer's right to it,

to the payee, can properly arise in the present case. If a check can ever have this effect, it can only be in those cases when it has been given for a valuable consideration. Here the whole tendency of the evidence was to show there was no valuable consideration to support an assignment. The consideration implied by the giving of the check cannot aid the plaintiff. Upon any theory of the case, it was competent to inquire into the real consideration, and the plaintiff, without waiting for the consideration to be attacked by the defendant, himself introduced evidence to show what the consideration actually was. The whole tendency of this evidence, as well as that introduced by the defendant, was to show that the drawing of the check, and placing it in the hands of the plaintiff, was understood and intended by the drawer and the plaintiff as a substitute for a testamentary disposition of this money by the drawer, to avoid the expenses of administration on his estate, and that there was no pecuniary or valuable consideration. The arrangement was clearly not such as to constitute a valid will; and as an intended substitute for a testamentary disposition, it must have been understood as in its nature revocable by the drawer at any time prior to his death. And if the plaintiff, by the arrangement, was to do any act with reference to the check, or the money, previous to Simson's death — which the evidence does not fairly tend to show — it could only have been as the agent of Simson, and not as trustee, or in his own right as a party having an interest.

If, on the other hand, as we think the testimony clearly tends to show, he was only to act in the matter after the death of Simson, appropriating the money first to the payment of funeral expenses, and the balance to be paid to the family, or some member of it; then, unless the delivery of the check can be sustained

as a *donatio causa mortis*, no interest whatever is vested in the plaintiff, and the trust intended never took effect; but the check, with the whole arrangement, was revoked by Simson's death, and the bank, after notice of the death of Simson, and of the arrangement upon which the check was given, could not have paid the check to the plaintiff without the risk of being again called upon to pay an administrator upon the estate.

Did, then, the execution and delivery of the check constitute a valid *donatio causa mortis?* Without acceptance by the bank, or some special undertaking on its part, we do not think the bank could be held liable upon a check, as such, to the payee. There is no privity of contract between the payee and the drawee; and if the money is not paid upon the check, the drawee is only accountable to the drawer. The payee does not take an unaccepted check, relying upon the credit of the drawee, but that of the drawer. We do not, therefore, concur in the opinion expressed in *Fogarties v. State Bank*, and *Ambler v. Same*, 12 *Rich.*, (*S. Car.*,) *R.*, 518, holding the drawee of an unaccepted check liable to a suit by the payee.

The drawer, therefore, in the present case was the only party who could have been held liable to the plaintiff, if any; and we think no mere contract, liability or obligation of the donor can be recognized as the proper subject of a gift *causa mortis.* — See *Story's Eq. Jur.*, §607*a*, §607*c*; *Meach v. Meach*, 24 *Vt.*, 598; *Raymond v. Sellick*, 10 *Conn.*, 480; *Holley v. Adams*, 16 *Vt.*, 206; *Harris v. Clark*, 3 *Comst.*, 94; *Tate v. Hilbert*, 2 *Ves.*, *Jr.*, 111; *Thompson v. Dorsey*, 4 *Md. Ch. Decis.*, 149; *Dole v. Lincoln*, 31 *Me.*, 422.

We see, therefore, no ground, which the evidence in this case tends to establish, upon which the plaintiff below was entitled to recover.

The judgment of the Circuit Court must be reversed,

with costs to the plaintiff in error, and a new trial awarded.

The other Justices concurred.