Harrison, Receiver, *v.* Wright *et al.*

Filed Feb. 14, 1885.

------

No. 11,456.

HARRISON, RECEIVER, *v.* WRIGHT ET AL.

BANK CHECKS.—*Definition.*—*Bill of Exchange.*—When properly filled out with the date, amount, the names of drawer and payee, the following is a banker's check, and not an ordinary bill of exchange: "Indianapolis, Ind., ————, 1883. No. ———. Pay to the order of ———— ————, ———— dollars. ——— ————, Cashier. To the United States National Bank, New York."

SAME.—*Force and Effect of Such Check.*— *Assignment.*— *Insolvent Drawer.*— *Preferred Creditor.*—Such a check, drawn upon the drawer's banker, without words of transfer, and drawn upon no particular designated fund, does not, of itself, either as between the drawer and drawee, or drawer and payee or holder of the check, operate as an appropriation or equitable assignment of a fund in the hands of the drawee. Nor does it operate as an assignment of a part of the drawer's chose in action against the drawee; and hence the holder of such a check is not entitled to a preference as against the depositors and general creditors of an insolvent drawer. For the reasons upon which this ruling is based, and an extended review of the authorities, see the opinion.

From the Marion Superior Court.

*S. Claypool, W. A. Ketcham, B. Harrison, C. C. Hines, W. H. H. Miller* and *J. B. Elam,* for appellant.

*T. A. Hendricks, C. Baker, O. B. Hord, A. W. Hendricks, A. Baker, E. Daniels, T. L. Sullivan, A. Q. Jones, C. A. Dryer, L. Howland, C. Byfield* and *M. Moores,* for appellees.

ZOLLARS, C. J.—The Indiana Banking Company, a partnership engaged in the business of banking, suspended payment on the morning of August 10th, 1883.

At the time of the suspension, there were outstanding checks or drafts drawn by the banking company in favor of various parties, and upon different banks in different cities. These drafts had been drawn at different dates, ranging from the preceding April, up to and on the day preceding the suspension. Some of these check-holders were depositors with the Indiana Banking Company, and purchased the checks, by checks upon their deposits in the bank. Others, who were not depositors, paid the cash for their checks. Some of the checks, too, were given for collections made by the banking company for the payees named therein.

At the time of the suspension, the Indiana Banking Company had sufficient funds in each of the banks to meet all checks drawn upon it, except the United States National Bank of New York. To supply this bank with funds to meet the checks upon it, the Indiana Banking Company made checks in its favor upon banks in Baltimore and Philadelphia, and forwarded them to it for credit, on the evening before the suspension. These banks held sufficient funds of the Indiana Banking Company, and if they had paid the checks, sufficient funds would have gone in the usual course of mail to the New York bank to have met all checks drawn upon it.

Upon hearing of the failure of the Indiana Banking Company, the Baltimore and Philadelphia banks declined to pay these checks, and yet hold the funds, subject to the order of the Indiana Banking Company, or its receiver.

At the time of the suspension, the New York bank had

some funds of the Indiana Banking Company, and paid them out upon its checks. After those funds were thus exhausted and the Baltimore and Philadelphia banks refused to pay, the New York bank returned the checks in its favor to the receiver of the Indiana Banking Company. All of the checks were duly presented to the banks upon which they were drawn within a reasonable time after the failure of the Indiana Banking Company. This company issued the several checks in the usual course of business, the managers hoping and believing until the morning of the 10th of August, that they would be able to maintain its credit, and go on with the business of the bank.

The assets of the Indiana Banking Company have passed to the receiver herein, appointed by the court, and he is charged with the duty of settling its affairs. The assets are not sufficient to pay the depositors and other debts in full.

The check-holders claim that they should be preferred, and paid in full, and thus they make an issue with the general creditors. The receiver commenced this action to have an adjudication of the rights of these several parties. Differing only as to amounts, the number and date, the names of payees, and the names of the drawees (banks), the checks were as follows:

" No. ———.                INDIANAPOLIS, IND., ——, 1883.

" Pay to the order of ——————— ————————————,

——————————————————Dollars.

"                 " ———————— ————————————, Cashier.

" To the United States National Bank, New York."

The contention of the check-holders is: *First.* That the checks are ordinary bankers' checks, and that the drawing and delivery of them operated as an equitable assignment to them, *pro tanto*, of the funds of the Indiana Banking Company in the hands of the drawees; and, *Second.* That whether this is so or not, to the extent of making the drawees liable to the payees, they operated as an equitable assignment as between the Indiana Banking Company and the payees of the

checks, and, as the receiver takes the place of the bank in this regard, that equity should be enforced against him, and they be paid in full.

Some of the cases hold to this distinction, while others disregard it. For convenience, we group the cases into three classes:

*First.* A class which holds that the drawing and delivering of a check do not operate as an assignment, in any sense, of the drawer's rights against the drawee, nor of the funds upon which it is drawn, nor give the payee or holder any rights as against the drawee, unless, in some way, the check is accepted by such drawee; and that hence, as between the drawer and payee or holder, the check does not operate as an assignment of the fund drawn upon, or of the drawer's rights as against the drawee.

*Second.* Another class of cases holds that the drawing and delivery of a check operate as an equitable assignment, *pro tanto*, of the fund in the hands of the drawees, and give the holder the right to collect from the drawee by suit. These cases, of course, hold, also, that a check operates as an assignment as between the drawer and payee.

*Third.* Another class seems to hold that whether a check has this effect or not, it operates as an equitable assignment as between the drawer and payee.

On account of the diversity of rulings by the different courts, and the diverse reasons upon which they are founded, the importance of the questions involved, and the fact that a decision of this court is assailed, it seems necessary that we should examine the theories advanced by either side in this case, and the rulings by other courts. Thus far we have used the term "check" in speaking of the papers issued by the Indiana Banking Company. It is contended, however, by the appellant, that they are not checks, but ordinary bills of exchange. Here, again, the cases and the law-writers are in sharp conflict. We think that upon the weight of authority, and the better reason, the papers issued by the Indiana Bank-

ing Company should be considered and held to be banker's checks, drawn by one bank upon another bank. In the case of *Griffin* v. *Kemp*, 46 Ind. 172, in speaking of checks, this court said: "A check is defined to be a written order, or request, addressed to a bank, or to persons carrying on the business of bankers, by a party having money in their hands, requesting them to pay, on presentment, to another person * * * a certain sum of money specified in the instrument. It has been said that checks have many resemblances to bills of exchange, and are, in many respects, governed by the same rules and principles as the latter. But *nullum simile est idem,* and their nature, obligation, and character are in some respects different from those of common bills of exchange. The circumstances in which they principally differ from bills of exchange, or at least from bills of exchange in ordinary use and circulation, are: 1st. They are always drawn on a bank, or on bankers, and are payable on presentment without any days of grace. 2d. They require no acceptance as distinct from prompt payment. 3d. They are always supposed to be drawn upon a previous deposit of funds. * * * A check so far differs from a bill of exchange or note, that its payment may be countermanded by the drawer before it is accepted or paid by the bank."

In the case of *Henshaw* v. *Root*, 60 Ind. 220, it was said that delay in giving notice of non-payment does not discharge the drawer of a check from liability, unless damage results from such delay, and then only to the extent of the damages sustained. This of course is not true of a bill of exchange. *Purcell* v. *Allemong*, 22 Grat. 739.

In the case of *First Nat'l Bank of Cincinnati* v. *Coates*, 3 McCrary, 9, it was held that a draft by one bank upon another bank is a check, though it is apparent on its face that the drawer and drawee are residents of different States.

In the case of *Rosenthal* v. *Mastin Bank*, 17 Blatchf. 318, a draft by a bank in Missouri on a bank in New York was treated as a banker's check. See, also, *Moses* v. *Franklin*

Harrison, Receiver, *v.* Wright *et al.*

*Bank of Baltimore,* 34 Md. 574; *Planters' Bank* v. *Keesee,* 7 Heisk. (Tenn.) 200; *Planters' Bank* v. *Merritt,* 7 Heisk. 177; *Lester & Co.* v. *Given, Jones & Co.,* 8 Bush (Ky.) 357.

## First Class.

Treating these checks, as such, did the simple issuing and delivery of them, under the circumstances, without further agreement, operate as an equitable assignment of the funds drawn upon, as between the payees and drawees, or give the payees any right of action against the drawees? It was held by this court, in the case of *Nat'l Bank of Rockville* v. *Second Nat'l Bank of Lafayette,* 69 Ind. 479 (35 Am. R. 236), that the payee of a bank check can not maintain an action against the drawee, unless the check has been accepted by the drawee. This is the case assailed by appellees, the holders and payees of the checks. The conclusion reached in the case is sustained by the earlier case of *Griffin* v. *Kemp,* 46 Ind. 172, where it was said : "Although there are cases to the contrary, it seems clear upon principle and by the great weight of authority, that the holder of a check can not sue the bank for refusing payment, in the absence of proof that the check was accepted by the bank, or the amount thereof charged against the drawer." It is also in accordance with the rulings of the English courts, and the Supreme Courts of the United States, Louisiana, New York, Massachusetts, Pennsylvania, Michigan, Tennessee, Virginia, New Jersey, Missouri, most of the United States circuit and district courts, Parsons on Notes and Bills, Morse on Banks and Banking, Grant on Banking, and all of the law-writers, as we now recollect, except Mr. Daniel in his work on Negotiable Instruments.

The case of *Griffin* v. *Kemp, supra,* was based upon the case of the *Bank of the Republic* v. *Millard,* 10 Wall. 152, which seems to be treated as a leading case, partly, perhaps, on account of the high authority from which it emanates. That was an action by the payee of an unaccepted bank check

against the bank upon which it was drawn, and it was held that he could not recover.

The court said: "As checks on bankers are in constant use, and have been adopted by the commercial world generally as a substitute for other modes of payment, it is important, for the security of all parties concerned, that there should be no mistake about the status, which the holder of a check sustains towards the bank on which it is drawn. It is very clear that he can sue the drawer if payment is refused, but can he also, in such a state of case, sue the bank? It is conceded that the depositor can bring assumpsit for the breach of the contract to honor his checks, and if the holder has a similar right, then the anomaly is presented of a right of action upon one promise, for the same thing, existing in two distinct persons, at the same time. On principle, there can be no foundation for an action on the part of the holder, unless there is a privity of contract between him and the bank. How can there be such a privity when the bank owes no duty and is under no obligation to the holder? The holder takes the check on the credit of the drawer in the belief that he has funds to meet it, but in no sense can the bank be said to be connected with the transaction. If it were true that there was a privity of contract between the banker and holder when the check was given, the bank would·be obliged to pay the check, although the drawer, before it was presented, had countermanded it, and although other checks, drawn after it was issued, but before payment of it was demanded, had exhausted the funds of the depositor.   *   *   *   *   The right of the depositor, as was said by an eminent judge, is a chose in action, and his check does not transfer the debt, or give a lien upon it to a third person without the assent of the depositary."

It was said further, that the relation between the depositor and depositary is that of creditor and debtor; that the money deposited becomes the money of the depositary, to be used

and loaned as its own, as it may choose; that the contract is purely a legal one, without any element of trust whatever. It was said further, that it may be, that if it could be shown that the depositary has charged the depositor with the amount of the check, the payee might recover, as for money had and received.

The case of *First Nat'l Bank, etc.,* v. *Whitman,* 94 U. S. 343, was an action by the payee of a check against the depositary. The reasoning in the above case was adopted.

In the case of *Case* v. *Henderson,* 23 La. An. 49 (8 Am. R. 590), it was held that the payee and holder of a check upon a bank could not set it off against a note which the bank held against him. The decision is based upon the case of *Bank of the Republic* v. *Millard, supra.*

The case of *Dykers* v. *Leather Manufacturers' Bank,* 11 Paige, 612, was an action by the check-holder against the bank upon which it was drawn. It was held by the chancellor that he could not recover. After the check was drawn and delivered to the payee, the drawer notified the bank not to pay it, and after the payee had demanded payment of the bank the drawer withdrew his deposits. It was said that priority of a check does not entitle the holder to priority of payment, and that when several checks are drawn on a deposit, the bank is not bound to settle priorities; that it would be impossible for banks to do business if they were bound to settle conflicting claims of check-holders; that at any time before acceptance and payment the drawer may countermand the check; that the drawing and delivery of a check do not operate as a specific appropriation, *pro tanto,* of the fund upon which it is drawn, to the exclusion of subsequent checks, and that the rule as to the assignment of particular funds can not be applied to checks. The ruling has been adhered to in the State of New York. See *Chapman* v. *White,* 2 Seld. 412; *Risley* v. *Phenix Bank,* 83 N. Y. 318 (38 Am. R. 421); *Duncan* v. *Berlin,* 60 N. Y. 151; *People* v. *Merchants, etc., Bank,* 78 N. Y. 269 (34 Am. R. 532).

The case of *Carr* v. *Nat'l Security Bank,* 107 Mass. 45 (9 Am.

R. 6), was an action by the holder of a check against the drawee. It was based in part upon a special agreement by the bank with the depositor, to pay all checks that he might draw upon it to the extent of the fund deposited. It was held that the relation between the depositor and bank was that of creditor and debtor, and not of principal and agent, or trustee and cestui que trust; that the check did not operate to transfer any interest in the fund, either legal or equitable; that while the dishonor of the check would render the bank liable to the drawer, the payee could not maintain an action against it, and that the general agreement of the bank to pay all checks drawn upon it by the depositor could not be taken advantage of by the check-holders as a promise made for their benefit, because, when the promise was made, it was not known who the check-holders would be, nor the amount of the checks they might hold.

In the case of *Loyd* v. *McCaffrey*, 46 Pa. St. 410, it was held that a check upon a banker is not, of itself, an appropriation of the funds in his hands belonging to the drawer, unless it plainly appears that the fund claimed was the one designated, out of which payment was to be made; and that an agreement between the drawer, payee and banker, that if an attachment was levied on the drawer's funds, the check should at once be passed to the credit of the payee, and charged to the drawer, did not amount to an assignment, or raise a trust in favor of the payee; nor was it a present appropriation of the money.

In the case of *Second Nat'l Bank, etc.*, v. *Williams*, 13 Mich. 282, it was held that without acceptance by the bank, or some special undertaking on its part, the bank could not be held liable upon a check, even though drawn for the full amount of the deposit; that in such case there is no privity between the payee and drawee; that the only remedy of the former is against the drawer, and that the payee does not take an unaccepted check, relying upon the credit of the drawee, but upon that of the drawer.

The Supreme Court of Tennessee, in the case of *Planters'* *Bank* v. *Merritt, supra,* approved of the ruling in *Bank of the* *Republic* v. *Millard, supra,* and held that the holder and payee of a check or draft, drawn by a bank in Tennessee upon a. bank in New Orleans, had no right of action on the check against the New Orleans bank.

In the case of *Moses* v. *Franklin Bank of Baltimore,* 34 Md. 574, it was held that a check does not operate as an assign-- ment, *pro tanto,* of the fund upon which it is drawn, until it, is accepted, or certified to be good by the bank holding the. funds; that the bank upon which it is drawn can not be held. liable to the payee on the check itself; that the obligation of the bank upon which a check is drawn by a depositor to ac- cept and pay, is not to the holder of the check, but to the drawer, and that, therefore, the bank is bound to obey the in- structions of the drawer not to pay.  See, also, *Purcell* v. *Allemong,* 22 Grat. (Va.) 739.   Also U. S. Circuit Courts: *Essex County Nat'l Bank* v. *Bank of Montreal,* 7 Bissell, 193 ; *A. & R. Strain* v. *Courdin,* 11 Nat'l Bk. Reg. 156 ; *Rosenthal* v. *Mastin Bank, supra ; German Savings Institution* v. *Adae,,* 1 McCrary, 501.

Mr. Morse, in his work on Banks and Banking, at page 275, says : "A check which has not been accepted by the bank on which it is drawn, does not operate as an assignment to the: payee of the sum for which it is given." Parsons, in his work on Notes and Bills, vol. 2, p. 60, *et seq.,* states the same rule, and cites numerous cases in support of it, among them En- glish cases.

In the case of *Hopkinson* v. *Forster,* Law R. 19 Eq. C. 74, it was held by the English court that a check is clearly not an assignment of money in the hands of a banker, and that a banker who dishonors it is not liable to a suit in equity by the holder.   See, also, *Bellamy* v. *Majoribanks,* 8 Eng. L. & Eq. 513 ; *Creveling* v. *Bloomsbury Nat'l Bank,* 46 N. J. L. 255 ; S. C., 31 Albany L. J. 60.   Many other cases to the same effect might be cited.  The same rule has been applied to bills

Harrison, Receiver, *v.* Wright *et al.*

of exchange.   1 Parsons Notes and Bills, pp. 330–1; *Bank of Commerce* v. *Bogy*, 44 Mo. 1; *Kimball* v. *Donald*, 20 Mo. 577; *Jones* v. *Pacific Wood, etc., Co.*, 13 Nev. 359 (29 Am. R. 308); *Hopkins* v. *Beebe*, 26 Pa. St. 85; *Wheeler* v. *Stone*, 4 Gill (Md.) 38; *Bush* v. *Foote*, 58 Miss. 5 (38 Am. R. 310); *Sands & Co.* v. *Matthews, Finley & Co.*, 27 Ala. 399; *First Nat'l Bank, etc.*, v. *Dubuque, etc., R. W. Co.*, 52 Iowa, 378 (35 Am. R. 280).

Of course there is a difference between bank checks and bills of exchange, as we have seen, but there is enough similarity to make the adjudications upon one of some weight upon the other.

In accord with these cases are the cases holding that a check does not operate as an assignment as between the drawer and payee, or in any way give the payee or holder of the check a preference as against the general creditors of the drawer.

The facts in the case of *People* v. *Merchants, etc., Bank*, 78 N. Y. 269, were as follows :   A. gave a check upon a bank in Troy, in which he was a depositor.   The check became the property of a bank in New York, which forwarded it to the Troy bank for payment.   The Troy bank charged the depositor with the amount, returned the check to him as paid, and forwarded to the New York bank a check or draft for the amount upon another New York bank.   This check was not paid, and the Troy bank passed into the hands of a receiver.   The New York bank, holding the unpaid check, petitioned to have the receiver pay the check in full.   The court held that this should not be done, and placed the holding on the ground that the relation of the depositor and depositary is that of creditor and debtor, and that by the action of the Troy bank it became simply the debtor of the bank holding the check, without any element of trust, and that by accepting the check, instead of the cash, the New York bank trusted the Troy bank.

The case of *Attorney General* v. *Continental L. Ins. Co.*, 71 N. Y. 325 (27 Am. R. 55), was an action by the payee of a

check to have the receiver of the drawer pay the check in full, on the ground that as between the drawer and payee, the check operated as an equitable assignment. It was held that this could not be allowed. The ruling was placed substantially on the same ground as the case last above, with the additional reason, that such a holding is indispensably necessary to the safe transaction of commercial business. See, also, *Lunt* v. *Bank of North America*, 49 Barb. 221.

The facts in the recent case of *Grammel* v. *Carmer*, 19 Cent. L. J. 492, was as follows: A banker in Michigan sold a draft or check on a bank in New York, and before it was presented for payment made an assignment for the benefit of creditors. Payment was refused by the New York bank on account of the assignment. The action was by the payee of the check to have the assignee pay the check in full, on the ground that as between the drawer and payee it operated as an equitable assignment. It was held by the court, COOLEY, C. J., delivering the opinion (SHERWOOD dissenting), that the payee and holder of the check was not entitled to such preference.

The facts in the recent case of *Dickinson* v. *Coates*, 79 Mo. 250 (49 Am. R. 228), were as follows: The Mastin Bank of Kansas City drew a check or draft upon a New York bank, and before it was presented for payment made an assignment for the benefit of creditors. The assignee drew the funds from the New York bank. The action was against him to have the check paid in full, on the theory that the check worked an equitable assignment, and hence the assignee held the fund for the use of the holder of the checks. The decision was adverse to this claim, and was based upon the ground that the relation of the depositor and depositary was that of creditor and debtor, and that the check was not for the whole of the fund, nor for any particular fund, and contained no terms of transfer, and hence, before acceptance, did not work an equitable assignment. In a case that grew out of the failure of the same bank, and upon a state of facts, in all essentials, identical with the facts in the case last above, the same ruling was made by the U. S. Cir-

cuit in New York, by BLATCHFORD, J. *Rosenthal* v. *Mastin Bank, supra.* The same ruling was made in the case of *Winter* v. *Drury*, 1 Seld. 525. The same doctrine has been applied to bills of exchange.

It will be noticed, upon an examination of these cases and others holding the same doctrine, that they are, in the main, based upon the ground, that because the check does not operate as an equitable assignment as between the payee and the drawee, it does not as between the drawer and payee, and hence does not entitle the payee or holder to a preference. The case of *Coats* v. *First Nat'l Bank of Emporia*, 91 N. Y. 20, is not in conflict with these cases. Recognizing the doctrine of former cases, it was held that the transaction showed, as it did, that there was an intention to transfer, and a transfer, of the fund.

### Second Class of Cases.

The case of *Munn* v. *Burch*, 25 Ill. 21, was an action by a check-holder against the bank upon which it was drawn. It was held that he could recover, and that upon presentation of the check, both the legal and equitable right to the money of the drawer in the hands of the bank passed to him. In the course of the opinion it was said, that upon receiving the deposit the bank impliedly agrees with the depositor to pay it out on the presentation of his checks, in such sums as those checks may call for, " and with the whole world he agrees that whoever shall become the owner of such check, shall, upon presentation, thereby become the owner, and entitled to receive the amount called for by the check, provided the drawer shall at that time have that amount on deposit." It is said further: " Surely every sound lawyer will at once perceive a privity of contract between the banker and the holder of the check, created by the implied promise held out to the world by the banker, on one side, and the receiving of the check for value and presenting it, on the other." And still further: " It is a familiar principle of daily illustration, that a promise made to the public that the performance of a par-

ticular act shall entitle the person performing the act to a particular right, is a valid assumpsit to such person." See *Fourth Nat'l Bank of Chicago* v. *City Nat'l Bank of Grand Rapids*, 68 Ill. 398; *Chicago Marine, etc., Ins. Co.* v. *Stanford*, 28 Ill. 168; *Union Nat'l Bank* v. *Oceana County Bank*, 80 Ill. 212 (22 Am. R. 185). In this case it was further held, that after the check has passed to the hands of a *bona fide* holder, it is not in the power of the drawer to countermand the order of payment. See, also, *Brown* v. *Leckie*, 43 Ill. 497.

In the case of *Fogarties & Stillman* v. *The State Bank*, 12 Rich. (S. C.) 518, the same ruling was made, and upon substantially the same ground as in the Illinois cases. In the case of *Lester & Co.* v. *Given, Jones & Co.*, 8 Bush (Ky.) 357, it was held that the payee of a check drawn in Kentucky upon a bank in New York could maintain an action against the bank, upon the ground that the check operated as an absolute appropriation of so much money in the hands of the drawee. The reasoning of the court seems to place a bank check upon the same basis as an order drawn upon a particular fund in the hands of the drawee.

In the case of *Weinstock* v. *Bellwood*, 12 Bush, 139, this case was interpreted as holding, "that the bank held the money as the mere bailee of the depositor."

Distinguishing a check from a bill of exchange, and placing the ruling upon substantially the same ground as in the Illinois cases, it was held in the case of *Roberts* v. *Austin Corbin & Co.*, 26 Iowa, 315, that the payee or holder of a check may recover the amount of it from the drawee.

In the cases of *McGrade* v. *German Savings Institution*, 4 Mo. App. 330, and *Senter* v. *Continental Bank*, 7 Mo. App. 532, after holding that the relation of the depositor and depositary is that of creditor and debtor, that the original deposit in a strictly legal effect is a loan to the bank, and every payment a repayment of the loan *pro tanto*, it was held that the holder of the check could recover on the ground, that upon the presentation of a check, the holder is brought into privity

with the depositary by force of an implied agreement on the part of the depositary to pay the depositor's checks, and this, regardless of the fact, that at the time of the deposit, the names of the check-holders and the amounts of their check are unknown; and further, that when the checks are presented for payment they operate an absolute appropriation of the fund drawn upon, and can not be countermanded by the drawer. It should be observed that these cases, as authority in Missouri, are overthrown by the later case by the Supreme Court of that State. *Dickinson* v. *Coates, supra.* Thus we have the Supreme courts of Illinois, Kentucky, Iowa and South Carolina arrayed against the cases examined under the first class. The conflict between these classes of cases is irreconcilable. And there is a want of harmony as to the grounds upon which the conclusions in each class are based. It is evident that much of the confusion is the result of a failure to properly observe the distinction between legal and equitable rights, legal and equitable remedies, and the innovations by modern statutes. Some of the cases in the first are purely cases at law. The reasons upon which the first class of cases are grounded may be summarized as follows:

1st. The relation between the depositor and depositary is that of creditor and debtor, without any element of trust, and the right of the depositor is a chose in action, which is not transferred or subjected to a lien by the giving of a check, unless assented to by the drawee by accepting the check, or otherwise.

2d. The depositary can not be subjected to different actions by different check-holders, because he has the right to insist upon a single payment of the deposit.

3d. A part of a chose in action can not be assigned.

4th. A check, not being drawn upon a particular fund, does not work an assignment.

5th. There is no foundation for an action by the holder of

a check, because there is no privity of contract between him and the drawee.

6th. If the holder can maintain an action against the drawee, there would be a right of action upon one promise, for the same thing, in two persons at the same time, the payee and drawer.

7th. If a check works an assignment as against the drawee, he would be compelled to pay, although the deposit might be exhausted by subsequent checks.

8th. The holder of the check can not take advantage of the implied promise to pay the depositor's checks, because, at the time the deposit is made, neither the name of the holder nor the amount of his check is known.

9th. Priority of checks does not entitle the holder to a priority of payment. Banks are not bound to settle conflicting claims of check-holders, and could not transact their business if compelled to do so.

10th. Checks may be countermanded at any time before acceptance or payment, and this could not be so if they operated as an equitable assignment.

11th. In the absence of any evidence, except what the check furnishes, it must be presumed that the payee takes the check upon the credit of the drawer.

Let us examine these reasons in the order above:

1st. That the bank does not hold an ordinary deposit as trustee, but by the deposit becomes the debtor of the depositor simply, and may use the money as it pleases, is well settled by authority. With one or two exceptions, all of the above cases either concede or assert this. It is the doctrine of this court. *Coffin* v. *Anderson*, 4 Blackf. 395; *State, ex rel.*, v. *Clark*, 4 Ind. 315. See Morse Banking, 28, and the numerous cases there cited.

2d and 3d. The rule that a chose in action, or part of a chose in action, can not be assigned, is the rule of law, but it is not the rule in equity, and still less is it the rule under modern statutes, which, as in this State, expressly authorize

the assignments of choses in action, and direct that all actions shall be prosecuted in the name of the real party in interest. Under these statutes, no good reason is apparent why the assignee may not maintain an action at law. Pomeroy Eq., section 1277. But however that may be, in a case where the proceeding is clearly in equity, as here, all interested parties being before the court, there can be no doubt that an assignment of a part of a chose in action, or fund, if really made, will be upheld and enforced, whether the debtor has assented thereto or not. *McFadden* v. *Wilson*, 96 Ind. 253, and cases there cited; *Wood* v. *Wallace*, 24 Ind. 226; Pomeroy Eq., section 1270, *et seq.*, and cases there cited.

In Story's Equity Jurisprudence, section 1044, it is said, after stating the rule at law: "But in cases of this sort, the transaction will have a very different operation in equity. Thus, for instance, if A., having a debt due to him from B., should order it to be paid to C., the order would amount in equity to an assignment of the debt, and would be enforced in equity, although the debtor had not assented thereto. The same principle would apply to the case of an assignment of a part of such debt. In each case, a trust would be created in favor of the equitable assignee on the fund, and would constitute an equitable lien upon it." It may be added, too, that the depositary bank is not in a position to make the point that the depositor's claim against it should not be called for in parts, as its implied contract with the depositors is to thus pay, at his pleasure. If, therefore, these reasons were the only ones against an equitable assignment by a check, they clearly would not be sufficient in equity and under our statutes.

4th and 5th. When it is once conceded that there may be an assignment of a chose in action, or of a fund, the argument of want of privity between the assignee and debtor or holder of the fund is disposed of, under the equitable and statutory rules.

If, by the assignment, the assignee acquires a legal right, it is by force of the statute, without regard to the assent of

the debtor or holder of the fund. If he acquires an equitable assignment or right simply, under the rules in equity, this right is independent of any assent by the debtor or holder of the fund. After stating the rule at law as to the necessity of privity of contract, Mr. Pomeroy says: "The doctrine of equity is very different. Equity recognizes an interest in the fund, in the nature of an equitable property, obtained through the assignment, or the order which operates as an assignment, and permits such interest to be enforced by an action, even though the debtor or depositary has not assented to the transfer. It is an established doctrine, that an equitable assignment of a specific fund in the hands of a third person, creates an equitable property in such fund. If therefore A. has a specific fund in the hands of B., or, in other words, B., as a depositary or otherwise, holds a specific sum of money which he is bound to pay to A., and if A. agrees with C. that the money shall be paid to C., or assigns it to C., or gives to C. an order upon B. for the money, the agreement, assignment, or order creates an equitable interest or property in the fund in favor of the assignee C., and it is not necessary that B. should consent or promise to hold it for or pay it to such assignee." Pomeroy Eq., section 1280, and cases cited. Undoubtedly, under these rules, a part of a general fund or debt may be assigned. As to whether or not a check works such assignment, is a question to be considered hereafter. What we now hold is, that the simple facts that the fund or debt is a general one, and that there is no promise or assent to the assignment by the debtor or holder of the fund, are not insuperable barriers to such an assignment.

6th and 7th. We do not think these reasons conclusive or well taken. The actions by the holder and drawer of the check, would not be for the same thing. If, by the check, the holder becomes the legal or equitable owner of the chose in action, or of the fund upon which it is drawn, his action would be either legal or equitable, in proper cases, for the

amount of the check. The action by the drawer for the dishonor of his check is not for the amount of the check, but for injury to his credit by the dishonor. *Whitaker* v. *Bank of England*, 6 C. & P. 700; *Marzetti* v. *Williams*, 1 Barn. & Ad. 415; *Rolin* v. *Steward*, 14 C. B. 595; Morse on Banking, p. 519; Grant Banking, pp. 45, 69.

When a deposit is made in a bank, there is an implied promise on the part of the bank to the depositor, that it will pay such checks as he may draw, if, at the time of their presentment, it is indebted to him on account of deposits.

It is for a violation of this promise that the drawer has an action against the bank for damage to his credit. The implied promise on the part of the bank is not to pay all the depositor's checks, whether it is indebted to him or not at the time the checks may be presented for payment, nor to pay in the order drawn, if, at the time when drawn, it is indebted to him. If the check works but an equitable assignment of the chose in action, or funds drawn upon, of course the bank could not be affected in any way until after proper notice, as up to that time the equity would be a secret equity, as to the bank.

8th. That a promise upon a good consideration, made for the benefit of third parties, may be taken advantage of, and enforced in equity by such third parties, is well settled. And the fact that at the time the promise is made the third parties are not aware of it, and they, and the amount of their claims against the promisee, are unknown to the promisor, makes no difference, under the decisions of this and other courts. For want of privity of contract between the promisor and such third parties, such contracts could not be enforced under the common law. We cite some of the cases: *Bird* v. *Lanius*, 7 Ind. 615; *Hardy* v. *Blazer*, 29 Ind. 226, and cases there cited; *Devol* v. *McIntosh*, 23 Ind. 529; *Durham* v. *Bischof*, 47 Ind. 211; *Fisher* v. *Wilmoth*, 68 Ind. 449; *Miller* v. *Billingsly*, 41 Ind. 489. It should be noted that in these cases, except, perhaps, one in which work was done on the faith of the promise, the claims of the third parties were in existence

when the promise was made. *Loeb* v. *Weis*, 64 Ind. 285; *Beers* v. *Robinson*, 9 Pa. St. 229. And so, promissory notes and bills of exchange, under some circumstances, and checks, where the holder is entitled to fill a blank with the name of the payee, are exceptions to the common law rule as to privity of contract. In such cases, of course, the payee is not known at the time the check is issued. 2 Whart. Con., section 795. These reasons, of themselves, therefore, as broadly stated, we think, are not conclusive in support of the doctrine of the cases of the first class. This brings us, naturally, to the main reason upon which the cases of the second class are grounded, viz., that the implied promise on the part of the depositary to pay the depositor's checks is a promise for the benefit of third parties, the check-holders, and may be enforced by them against the depositary. That there is an implied promise on the part of the depositary to the depositor to repay the amount deposited, upon the checks of the depositor, is the doctrine of all the cases and law-writers. This implied promise arises wholly from the custom of bankers in the transaction of business with depositors. Morse Banking, p. 35; *Downes* v. *Phœnix Bank*, 6 Hill, 297; *Margette* v. *Williams*, 1 Barn. & Ad. 415. Under this custom, the banker impliedly agrees to waive his right to insist upon repayment in one lump, and to pay in such sums as the depositor may order by his checks. This promise is made with the depositor, for his convenience, and we think can not be said to be made for the benefit of third parties, who may become the holders of the depositor's checks. And much less can it be said that the "promise is to the whole world." Neither can it be said, as we think, that under the custom of bankers, they receive the deposits with the understanding or thought that they assume any obligation or responsibility to the holders of the checks. It is clearly not the intention of bankers, when receiving deposits, that they may be sued by such individual check-holders upon a refusal to pay.

As said by this court in the case of *Nat'l Bank of Rockville*

v. *Second Nat'l Bank of Lafayette, supra,* "There is no implied contract in favor of the payee, against the drawee, that he will either accept or pay the check." To hold otherwise would be to overthrow the 9th and 10th reasons upon which the first class of cases are grounded, which reasons are reasonable and supported by the great weight of authority. As there stated, the depositary banks are not bound to settle conflicting claims of check-holders, nor could they transact their business if compelled to do so. It can hardly be supposed that the banks would establish a custom, to ripen into an implied contract, by which they would be thus subjected to annoyance, delay and uncertainty in the transaction of their business which must be done with the utmost dispatch. And then, too, if, with the deposit, there is an implied promise for the benefit of check-holders that may be enforced by them, it would result that after a check is presented, the holder is brought into privity with the bank, and the payment of the check can not be countermanded by the drawer. And so the courts have been compelled to hold, which have asserted the doctrine of the second class of cases. Such a holding, however, is opposed to the common understanding and to the general weight of authority. All of the cases of the first class, where the question is mentioned, assert the doctrine that at any time before payment, or before the bank has in some way committed itself to pay, the check may be countermanded by the drawer.

Mr. Morse, citing numerous cases in his support, says: "A check is simply a written order of a depositor to the bank to make a certain payment. It is executory, and as such, it is of course revocable at any time before the bank has paid, or committed itself to pay it.     *     *     *     *     *

"The remark once fell from Judge STORY, in the oft cited 'Matter of Brown,' that the drawer of a check had no right to countermand payment at the bank. It was obvious from the context that the judge referred rather to moral right than to legal right. He meant simply that a debtor who had given to his creditor a check in payment of the debt had

no right as towards that creditor, 'right' being considered as a matter of honesty, to order non-payment of the check. The language of the judge, taken in isolation from the circumstances of the case, and from the remainder of the opinion, seems to admit a different meaning, and is therefore capable of a misinterpretation and misuse, which have sometimes been feebly attempted. But if such a misunderstanding is possible, still the authorities to the contrary effect are numerous, and leave no shadow of doubt upon the point.

"The bank is the drawer's agent. Its primary duty is to hold or to pay his money as he directs. Primarily it owes no duty to the holder, except under and by virtue of directions from the drawer. Until, by reason of these directions, it has assumed voluntarily, or by action of law has involuntarily come under secondary and superseding obligations to the holder, the latest orders from the drawer govern its right to act on his behalf." Morse Banking, p. 302–3, and cases there cited. So, also, *Griffin* v. *Kemp, supra;* Story Prom. Notes, section 498, and cases cited.

This power on the part of the depositor to countermand the payment of checks is a part of the implied contract between him and the depositary when the deposit is made, as much as the implied agreement on the part of the depositary to pay his checks. We conclude, therefore, that the check-holder can not recover of the drawee on its implied promise to the depositor.

Another reason upon which some of the cases of the second class are founded is, that the check operates as an appropriation, *pro tanto,* of the fund in the hands of the drawee. This does not commend itself to our judgment. That the depositary is a bailee or trustee of any fund, is not supported by reason or authority. Strictly speaking, the depositary holds no fund to be appropriated. It owes a debt. The right of the depositor is a chose in action. This or a part of it may be assigned. When assigned, equity, for the purpose of making good the assignment, seizes upon the debt

and calls it a fund. An ordinary check, however, without words of transfer, and drawn upon no particular fund, does not effect such an assignment. In some of the cases it is said that by an acceptance of the check, an equitable assignment is effected; but this is not strictly correct, because, by accepting the check, the depositary assumes an independent and unconditional liability to the holder. Morse Banking, pp. 307, 313, and cases there cited.

The eleventh and last reason upon which the first class of cases is grounded, as given above, is, that in the absence of evidence, except what the check furnishes, it must be presumed that the payee takes the check upon the credit of the drawer. Many of the cases assert this, and it seems to us reasonable. It may be said that the payee relies upon the honesty of the drawer, in either an express or implied representation that the drawee is indebted to him. Doubtless, the payee of the check relies upon the financial ability of the drawer to make good his express or implied promise to refund to him the amount of the check, should payment be refused by the drawee. It could hardly be said that the payee of each check takes it with the idea of suing the drawee. Especially could this not be said where the drawer and payee are residents in one State, and the drawee in a distant State. That a part of a fund or chose in action may be assigned, we have already seen; and where there is an intention of the drawer and payee that a fund or chose in action, or a part of either, shall be assigned, the assignment may be effected by an order, bill or check. In such case the intention controls, and will be given effect by the courts. It is upon this principle that an order upon the whole of a special fund operates as an assignment. See Pomeroy Eq., section 1280, *et seq.*, and cases there cited; Bispham Prin. of Eq., pp. 219 and 220, and cases there cited.

Says Mr. Pomeroy: "What shall amount to the present appropriation which constitutes an equitable assignment, is a question of intention to be gathered from all the language

construed in the light of the surrounding circumstances."
Pomeroy Eq., section 1282. So, it is said by the same author,
in the latter portion of section 1284 of the same work: "A
check may undoubtedly operate in this manner as an equi-
table assignment when it is so drawn as to show an unmis-
takable intention of the drawer to transfer his exact deposit
in the bank to the payee." See, also, *Kingman* v. *Perkins*,
105 Mass. 111. *Macomber* v. *Doane*, 2 Allen, 541. In the case
of *Kahnweiler* v. *Anderson*, 78 N. C. 133, it was said that the
intention to assign, founded upon a consideration, and ex-
pressed by a bill or draft, operates as an equitable assignment.
In the case of *Bank of Commerce* v. *Bogy*, *supra*, it was said
that the drawing of a bill of exchange does not, of itself, op-
erate as an equitable assignment of the debt, but is evidence
tending to show such an assignment; that anything that shows
an intention on the one side to make an irrevocable transfer
of the debt or fund, and from which an assent to receive it
may be inferred, will operate in equity as an assignment. To
the same point see *Kimball* v. *Donald*, *supra*; *First Nat'l
Bank, etc.*, v. *Dubuque R. W. Co.*, *supra*. This same doctrine
is asserted in many of the cases above cited. In speaking
of orders that will, or will not, of themselves operate as an
assignment, Mr. Pomeroy gives a very safe criterion. He
says: "The sure criterion is, whether the order or direction
to the drawee, if assented to by him, would create an abso-
lute personal indebtedness payable by him at all events, or
whether it creates an obligation only to make payment out
of a particular designated fund." Sec. 1280.

The acceptance of orders upon a particular designated fund,
which are held as assignments, binds the acceptor only to the
extent of the fund drawn upon. The acceptance of a check
creates an independent, unconditional obligation on the part
of the acceptor, whether he holds funds of, or is indebted to,
the drawer or not.

Our conclusion is, that a check in the ordinary form upon
the drawer's banker, without words of transfer, and drawn

upon no particular designated fund, does not of itself, oper-
ate as an appropriation or equitable assignment of a fund in
the hands of the drawee, nor does it operate as an assignment
of a part of the drawer's chose in action against the drawee.

Keeping in view our statutes, and the equitable rules al-
ready stated, we base this holding upon the considerations :

*First.* There is no implied contract on the part of the de-
positary of which the check-holder can take advantage as
against the depositary.

*Second.* In the absence of evidence to the contrary, or a
showing of an intention to assign a part of a fund in the hands
of the drawee, or a part of the drawer's. chose in action
against the drawee, it should be presumed that the payee or
holder of a check takes it upon the credit of the drawer, of
whom he may collect, if payment be refused by the drawee.

*Third.* To hold the contrary, would be to disregard the im-
plied and well understood right of the drawer to counter-
mand the payment of checks.

*Fourth.* It would greatly embarrass banks in the transac-
tion of their business to hold that they are liable to each
check-holder, and hence must, at their peril, settle conflicting
claims of check-holders.

In the case before us, the checks contain no terms of trans-
fer; they are not drawn upon any particular designated fund,
nor is there anything in them, or the circumstances connected
with the giving of any of them, that indicates any intention on
the part of the drawers or payees, that there should be an as-
signment of anything. We hold, therefore, that as between the
payees or holders of the checks and the drawees, there was
no appropriation or assignment of any fund, nor of any part
of the drawer's chose in action against the drawees.    It
would seem to follow logically, that as there is no assignment
as between the payee and drawee, there is none as between the
drawer and payee.    And so the cases of the first class hold.

This brings us to the third class of cases as we have grouped
them, and to a consideration of the question as to whether

or not, notwithstanding our conclusions thus far, the giving and receiving of the checks operated as an equitable assignment as between the payees and drawer, or, in other words, entitle the payees and holders to a preference over the depositors and other general creditors of the Indiana Banking Company.

## THIRD CLASS OF CASES.

In an action to have a check paid in full from the estate of a bankrupt drawer, it was held, *In the Matter of Brown, in Bankruptcy*, 2 Story C. C. 502, that the holder was entitled to this, on the ground that a check is an instrument *sui generis*, and is to be construed exactly as the parties intend it; that the check, of itself, is an appropriation of the fund in the hands of the drawee, and that, consequently, the drawer has no right to withdraw the funds after giving the check.

The case of *First Nat'l Bank of Cincinnati* v. *Coates*, 3 Mc-Crary, 9, grew out of the failure of the Mastin Bank, at Kansas City, as did the cases in 17 Blatchf., 79 Mo., and 91 N. Y., *supra*. The bank made an assignment to Coates, after having issued and delivered a "draft" upon its depositary in New York. Before the "draft" was presented for payment Coates withdrew the deposit from the New York bank. As between the assignee and payee, Mr. Justice MILLER held that the "draft" was in law and fact a check, and that while a deposit of money in a bank creates a debt on the part of the bank, it is a fund deposited to the credit of the depositor, and that the check operated as an appropriation or equitable assignment, *pro tanto*, of the fund to the holder, and that thus far the fund did not pass to the assignee. It seems to have been contended that there was no assignment by the check; that for want of privity, and because the check was for but a part of the fund drawn upon, and because the depositary could not be called upon to pay out the deposit except in a single payment, the payee of the check could not maintain an action against the drawee, and was, therefore, not entitled to a preference as against other creditors of the drawer. All this the

Justice answered by saying that such is the rule at law, but not in equity.   Upon substantially a similar state of facts, except that the check was for a collection made by the drawer, a like ruling was made in the case of *German Savings Institution* v. *Adae*, 1 McCrary, 501.   Stress was laid upon the fact that the check was for a collection.

The facts in the case of *Gardner* v. *Nat'l City Bank*, 39 Ohio St. 600, were, that a party wishing money procured it by giving his check to a bank in Ohio upon a bank in Philadelphia for the full amount of his deposit in the latter bank.   Before the check was presented, the Philadelphia bank remitted to the drawer by a certified check.   He deposited this in another bank in Ohio as cash, and it was afterwards paid.   After making subsequent deposits in this bank, and checking out various sums from time to time, the drawer made an assignment for the benefit of creditors.   The assignee and all interested parties were brought before the court by an application on part of the payee of the check to have it paid in full.   The court distinguished the case from one between the payee and drawee, or where the check is for less than the whole fund drawn upon, and held, that as between the drawer and payee, it was the manifest intention of the parties to transfer the absolute right to receive the amount from the drawee, and that the draft should operate as an equitable assignment of the funds in the hands of the drawee; that it did operate as such assignment, and that when the drawer received the amount from the drawee, it in equity belonged to the payee.

Mr. Daniel (2 Daniel Neg. Inst., sec. 1638), after arguing in favor of the doctrine of the cases of the second class above, states that there can be no doubt that, as between the drawer and payee, the check operates as an equitable assignment, and bases his statement upon the cases of the third class alone, and the cases of *Bell* v. *Alexander*, 21 Grat. 1, *Morrison* v. *Bailey*, 5 Ohio St. 13, *Robinson* v. *Hawksford*, 9 Q. B. 51, *Keene* v. *Beard*, 8 C. B. N. S. 373, and the case of *Bank of the*

*Republic* v. *Millard*, *supra*. We are unable to understand in what way the case in Wallace, or the English cases, lend any aid to the position of the author. The cases cited from 5 Ohio St. and 21 Grat. did not involve the question necessarily,. as they were actions upon the check by the holder against the drawer, the check not having been paid by the payee.

As will be observed, the case in 2 Story, *supra,* is based upon the broad statement that a check is an appropriation of so much of the fund in the hands of the drawee, so that the drawer can not withdraw it after giving the check. This case is in conflict with all the cases of the first class above, has been many times criticised and condemned, and we think properly so..

The case in 39 Ohio St. is based upon the theory, that from the fact that the check was for the whole of the drawer's de-posit in the Philadelphia bank, and the other circumstances of the transaction, it plainly appeared, that as between the drawer and payee, the intention was to transfer the ownership of that deposit to the payee.

It is not improper to remark that the opinion in the case in 3 McCrary, *supra*, was delivered orally. If the sweeping statements there made as to the assignment by a check should be carried out to their full extent, they would result in a holding that in equity a check works such an assignment as between the payee and drawee also. Such a holding, as we have seen, would be in conflict with the great weight of authority.. The same may be said of the case in 1 McCrary, *supra*.

Possibly, cases may arise where, as between the drawer and payee or holder of a check, a court of equity may interfere and protect the check-holder, not because the check of itself works an assignment of any fund or of any part of the drawer's chose in action against the drawee, but rather upon the equi-table doctrine of money had and received.

By giving a check, the drawer impliedly says to the payee that he may collect so much from the drawee, if he will pay it. And while the depositary does not hold the money as the agent of the depositor, it may be said that as to when, to

whom, and in what amounts, the amount deposited shall be paid out, the depositary acts as the agent of the depositor, subject to his orders.

A check may be given, and before payment the money withdrawn from the depositary by the drawer under such circumstances that it would be inequitable and a fraud to allow the drawer to retain the amount received for the check and also the amount withdrawn from the depositary. For example, if A., having no property except a deposit, should receive B.'s money for a check upon the depositary, and, after giving the check, should withdraw the deposit; as an action upon the check would be fruitless, it might be that B. could, in equity, follow the money withdrawn by A. and recover it as for money had and received, if this would not interfere with the rights of other equally worthy creditors. This, however, is not the case before us.

One or two of the checks in the case before us were given for collections made by the banking company. It may be, that if the payees had declined to accept the checks, they might have insisted that the amounts thus collected were held in trust, and should, therefore, be paid in full. This they did not do, but accepted the checks and still retain them. We think that it should be held, as was held in one of the New York cases, that by accepting the checks instead of the cash, the payees gave credit to and relied upon the Indiana Banking Company, and thus placed themselves upon an equality with the other check-holders.

Some of the checks were purchased with cash by persons who were not depositors with the bank; others by depositors giving their checks. The court below held that the checks purchased with cash should, for that reason, be paid in full, and that the other checks should share *pro rata* with the other debts. We can see no substantial reason for such a preference. If the depositors had withdrawn the amount from the bank, and with this purchased the checks, it might well be said that they purchased them with cash. Whether the

checks were paid for in cash or by the checks, the bank in each case received the amount of them.

The transaction between Murphy, Hibben & Co. and the Indiana Banking Company, in the delivery and acceptance of the checks, was attended with some circumstances peculiar to that transaction, but they are not such, we think, as to rebut the presumption that the checks were received upon the credit of the Banking Company, or to show that the parties intended that the checks should operate as an assignment of any fund or chose in action. And so with all of the checks, there is nothing to show that there was any intention by the parties that they should operate as an assignment of any fund or chose in action. There is nothing to overthrow the presumption that they were accepted upon the credit of the Indiana Banking Company.

The checks were dishonored. Because of that dishonor the holders have a right of action against the Indiana Banking Company. That right, like the right of action in favor of the depositors and other creditors, is a legal right. The affairs of the bank are in the hands of a receiver, but this does not change the nature of these rights. *Grammel* v. *Carmer*, *supra*.

There is nothing in the case to create a superior equity in favor of the check-holders as against the depositors and other creditors. No fraud is charged or shown whereby the payees were induced to part with their money for the checks. They were purchased in the usual course of business. The assets of the bank will not pay its debts in full. The depositors deposited their money, relying upon the credit of the bank, that the amounts would be repaid to them when called for. The payees purchased the checks, relying upon the credit of the bank, that the amounts paid for them would be refunded if, for any cause, the checks should not be paid by the drawees. It is a case where equality among the creditors is equity.

So far as it was adjudged below that the check-holders are not entitled to preference the judgment is affirmed; so far as

it was adjudged that any check shall be preferred and paid in full as against the other creditors of the Indiana Banking Company the judgment is reversed, with instructions to the court below to proceed in accordance with this opinion. It is further ordered that the court below direct the receiver to pay the costs of this litigation thus far out of the fund in his hands.

NOTE.—ELLIOTT, J., did not participate in the decision of this cause.

Filed March 17, 1885.